No. 81-189

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

VERNON L. VAN NATTA a/k/a JOHN SMITH,

Defendant and Appellant.

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade
Honorable H. William Coder, Judge presiding.

Counsel of Record:

For Appellant:

Karl Nagel, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana

Submitted on briefs: April 1, 1982

Decided: September 23, 1982

Filed: SEP 23 1982

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant-appellant was arrested and charged with two counts of felony burglary and two counts of felony theft. Following a rash of incidents in Cascade County and Lewis and Clark County on November 16, 1980, and November 17, 1980. On February 24, 1981, a jury verdict found defendant guilty on all four counts. Defendant appeals from this conviction.

In the early morning hours of November 17, 1980, three bars in the Cascade-Wolf Creek area were burglarized. Prior to the burglaries, on November 16, 1980, Jack Pachek reported someone stole his late model pickup truck. The truck, a 1977 two-tone blue and white Ford club cab was stolen while parked in front of Pachek's business located in Great Falls.

The first break-in took place at the Ulm Bar in Ulm, Montana. The intruder first attempted to enter the bar by removing pieces of the window frame on the front door. When this attempt proved unsuccessful, entrance was gained by breaking into a residence owned by Frank Ball which lies adjacent to the bar. Early in the morning of November 17, 1982, Ron Ball was awakened by an intruder. When Ron looked down the hallway of the house he observed an individual, who he later identified as the defendant, removing guns from the gun room. Ron watched as the defendant removed the guns, proceeded down a hallway and left through a garage door. Frank Ball later identified the stolen guns as an old Winchester Model 70 rifle, a 12-gauge shotgun, a 10-gauge shotgun, a 300 Savage and a Remington 22-250. Frank Ball, who was not present during the robbery, also noted that several items had been stolen from the bar adjacent to the residence including a stamp machine, a saddle, a case of Rainier beer and approximately $40 from the jukebox.

A second break-in occurred in the early morning hours of November 17, 1980, at the Mountain Palace Bar, thirteen miles south of Cascade, Montana. At the Mountain Palace Bar the

intruder gained entry by prying loose the wooden strips of a window frame, removing the window and then reaching through and unlocking the door. After unplugging the burglar alarm, the intruder removed a case of Olympia beer from the cooler and approximately $300 to $500 from the jukebox.

A third break-in occurred in the early morning of November 17, 1980, at the Craig Bar in Craig, Montana. At the Craig Bar the intruder gained entrance by removing the pins of the hinges of the front door. Several items were stolen from the bar including the money in the jukebox, some Lucky Lager beer, and a bottle of Seagram's Seven whisky.

At approximately 1:30 a.m. to 2:00 a.m. on November 17, 1980, Elmer Lindquist observed someone matching the description of the defendant park a blue pickup truck outside his house located near Cascade, Montana. When Lindquist made a noise in the house, the individual returned to the truck and drove to the highway. Lindquist went outside and noted a size L-78 by 15 Goodrich tire mounted on a cream colored wheel had been stolen from the bed of his pickup.

On the afternoon of November 17, 1980, John Strandel, a deputy sheriff in Cascade County, was driving to Great Falls on Interstate 15 to do follow-up reports on the Ulm and Mountain Palace break-ins. On the way, Strandel observed a highway patrolman parked behind a Ford club cab pickup. The previous night Strandel had observed a similar pickup parked west of Cascade on St. Peter's Mission Road at approximately 4:00 a.m. Strandel stopped to investigate and learned from Highway Patrolman, Larry Strickland, that the truck had been stolen from Great Falls. On the southside of the pickup, in the ditch, Strandel found six cans of Olympia beer, one can of Rainier beer, three cans of Lucky Lager beer and one Seagram's Seven whisky bottle. Lying on the pavement next to the passenger door of the pickup Strandel found on 12-gauge Remington shotgun shell, and one 10-gauge Remington shotgun shell. Strandel then searched an

area a few yards from the ditch where he first found the beer and found a stamp machine approximately fifty yards away from the pickup. Approximately ten yards east of the stamp machine, Strandel found six rifles laid side-by-side in the grass. Five of the rifles were later identified as those taken from the Ball residence in Ulm and the stamp machine was identified as that taken from the Ulm Bar. In the back of the truck Strandel found a B.F. Goodrich tire and wheel later identified as belonging to Elmer Lindquist. The sixth rifle was later identified as a .22 caliber rifle which had been stolen from a house in Craig on November 17, 1980.

On the morning of November 17, 1980, a man later identified as the defendant registered for a room at the Belmont Hotel in Great Falls under the name of Jim Todd. The individual paid for his room with fifty-cent pieces. On November 17 and 18, 1980, a man later identified as the defendant, entered the Town Tavern approximately one and one-half blocks from the Belmont Hotel. On November 17, the man spent approximately $40 in the bar and paid for all his drinks with fifty-cent pieces. On November 18, 1980, the man returned and again paid for all of his drinks with fifty-cent pieces.

On November 20, 1980, defendant was arrested and charged with burglary and theft. Defendant refused to identify himself except as "John Smith." An FBI check later revealed his true name of Vernon Leroy Van Natta. Initially, defendant was charged by information of Count I: Felony Theft, arising out of the theft of Pachek's pickup; Count II: Burglary, arising out of defendant's alleged break-in at the Ulm Bar; Count III: Felony Theft, arising out of defendant's alleged break-in at the Craig Bar; and Count IV: Burglary, arising out of the break-in at the Mountain Palace Bar. On February 11, 1981, respondent sent notice to defense counsel that the county attorney intended to amend the information. Respondent moved to amend the information by substituting the theft of personal property at the Ulm Bar in

- 4 -

the place of the break-in at the Craig Bar. The motion was granted by the District Court on February 17, 1981. On February 19, 1981, defendant was rearraigned and pled not guilty to all four counts. Up until February 19, 1981, defendant refused to cooperate with defense counsel. On that day, defendant requested the District Court to appoint other defense counsel. His request was denied. On February 20, 1981, defendant filed a motion to continue the trial date set for February 23, 1981, on the grounds that defendant was now ready to cooperate with defense counsel and more time was necessary to prepare for trial. Immediately prior to trial, on February 23, 1981, the District Court denied defendant's motion to continue. The District Court also denied defendant's motion in limine to exclude evidence of similar crimes committed on the same date as the crimes with which defendant was already charged. On February 24, 1981, a jury verdict found defendant guilty on all four counts. Defendant appeals from this conviction.

The issues presented for review are:

1. Whether the District Court erred by admitting evidence of crimes similar to those with which defendant was charged?

2. Whether the District Court erred by denying defendant's motion to continue the trial?

Rule 404(3)(b), Mont.R.Evid. defines the rule on the admission of other crimes evidence as follows:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Rule 404(3)(b) Mont.R.Evid., incorporates the general rule that evidence of other crimes is not admissible to show defendant committed a particular crime as charged. State v. Casagranda (1981), ____ Mont. ____, 637 P.2d 826, 38 St.Rep. 2122; State v. Hanson (1980), ____ Mont. ____, 608 P.2d 1083, 37 St.Rep. 657. Rule 404(3)(b) also states there are exceptions to the general

rule. These exceptions are governed by the guidelines set out in State v. Just (1979), _____ Mont. _____, 602 P.2d 957, 36 St.Rep. 1649:

> "There emerges a four-element test to determine the admissibility of evidence of other crimes or acts criminal prosecutions such as the one here. The first three of these elements were identified in State v. Jensen, 153 Mont. at 239, 455 P.2d at 634; the fourth is based on Rule 403, Mont.R.Evid. The four ~~facts~~ ᶠᵃᶜᵗᵒʳˢ are:
>
> "~~Factors~~
>
> "1. Similarity of crimes or acts;
>
> "2. Nearness in time; and
>
> "3. Tendency to establish a common scheme plan or system; and
>
> "4. The probative value of the evidence is not substantially outweighed by the prejudice to the defendant." 602 P.2d at 961.

This four-element test has been followed and applied in State v. Wurtz (1981), _____ Mont. _____, 636 P.2d 246, 38 St.Rep. 1808; State v. Brubaker (1981), _____ Mont. _____, 625 P.2d 78, 38 St.Rep. 432; and State v. Case (1980), _____ Mont. _____, 621 P.2d 1066, 37 St.Rep. 2057. When we apply the four-part test to the factual situation in the present case we find the evidence of the Craig break-in was admissible.

First, the break-ins at all three bars were similar. At each of the three break-ins the intruder gained entrance by prying open a door or window. Also, at each of the three bars the intruder broke into and stole the change from the jukebox and stole some beer or other alcohol.

Second, all three break-ins occurred sometime during the early morning hours of November 17, 1980. The distance between Ulm and Craig, Montana, is approximately thirty miles. The Mountain Palace bar is between Ulm and Craig. Certainly, the factors of timing and location indicate that the three break-ins were the work of the same person or persons.

Third, the pattern of the three break-ins do establish a common scheme, plan or system. As stated above, the methods of

break-in were similar, similar items were taken and all three break-ins occurred in the same time frame within thirty miles of each other. As all three bars are connected by Interstate 15, the facts indicate the three break-ins were effectuated pursuant to a common scheme, plan or system.

Fourth, the probative value of the evidence is not substantially outweighed by prejudice to the defendant. The admission provided circumstantial evidence which explained the finding of the Lucky Lager beer and the Seagram's Seven whisky bottle with the other evidence found at or near Pachek's stolen pickup truck. Here the evidence was not admitted merely to impugn defendant's character. The evidence was admitted for the purpose of showing a characteristic method, plan or scheme used in the commission of the offense or for the purpose of identifying the person who committed the offense and the jury was so informed.

In Just, supra, this Court held although other crime evidence may be admissible per the above criteria, it will not be admitted unless the proper procedure is followed. That procedure is:

> "(a) Evidence of other crimes may not be received unless there has been notice to the defendant that such evidence is to be introduced. The procedures set forth in section 46-18-503, MCA, should serve as guidelines for the form and content of such notice. Additionally, the notice to the defendant shall include a statement as to the purposes for which such evidence is to be admitted.
>
> "(b) At the time of the introduction of such evidence, the trial court shall explain to the jury the purpose of such evidence and shall admonish it to weigh the evidence only for such purposes.
>
> "(c) In its final charge, the court should instruct the jury in unequivocal terms that such evidence was received only for the limited purposes earlier stated and that the defendant is not being tried and may not be convicted for any offense except that charged, warning them that to convict for other offenses may result in unjust double punishment."
> 602 P.2d at 963.

Again, we find the proper procedure was followed in the present case. The first requirement is that the defendant have notice of the intent to introduce other crime evidence.

- 7 -

Respondent did give defendant notice of its intent as is reflected by defense counsel's introduction of the motion in limine, "[y]our honor, the State has given notice that they intend to introduce evidence of other crimes committed approximately the same date as the crimes with which Mr. Van Natta is charged."

The second and third requirements are that the jury must be properly instructed that the evidence is only received for a limited purpose, what that purpose is, and that the defendant is not being tried for the other offenses. Here the trial court instructed the jury as follows:

> "Ladies and gentlemen of the jury, evidence is about to be introduced for the purpose of showing the defendant committed crimes other than the ones for which he is on trial. You may not consider this evidence to prove that the defendant is a person of bad character, or that he has a disposition to commit crimes. You may only consider this evidence for the limited purposes of providing a characteristic method, plan or scheme used in the commission of the offense in this case, or the identity of the person who committed the offense. You may also consider this evidence to prove existance of intent, which is an element of the crime charged. You may not consider this evidence for any other purpose that would expose the defendant to unjust double punishment."

This instruction satisfies the requirements this Court put forth in <u>Just</u>, supra.

Defendant argues the District Court erred by denying defendant's motion to continue the trial date. Defendant's motion for a continuance states, "[c]omes now the defendant . . . and moves the Court for an order continuing the trial in the above-entitled matter for the reason that up to the date of this motion, the defendant has refused to discuss the case or cooperate with his counsel. The defendant has indicated on the date of this motion that he will cooperate with his counsel. Therefore, counsel will require time to prepare for trial and the two days between the date of this motion, and the date set for trial is insufficient time for such preparation." The motion is dated February 20, 1981. Defendant was arrested and charged on

November 20, 1980. Up until the date of the motion for continuance defendant refused to cooperate with defense counsel. Before a motion for a continuance is granted, the movant must show that he has employed due diligence to procure that which he now requests additional time to procure. State v. Klemann (1981), ___ Mont. ___, 634 P.2d 632, 38 St.Rep. 1627. Here the record shows defendant did not employ due diligence to cooperate with defense counsel before the motion and thus the trial court was correct in denying defendant's motion. Motions for continuance are addressed to the discretion of the trial court and the granting of a continuance has never been a matter of right. The District Court cannot be overturned on appeal in absense of a showing of prejudice to the movant. State v. Kirkland (1979), ___ Mont. ___, 602 P.2d 586, 36 St.Rep. 1963.

On appeal defendant argues the continuance should have been granted because the information was amended on February 17, 1981, and the trial date was February 23, 1981. We note defendant did not make this objection in his motion for a continuance. A similar situation arose in State v. Olson (1980), ___ Mont. ___, 614 P.2d 1061, 37 St.Rep. 1313, where this Court ruled since the informations were based on the same set of facts and because the charges involved were not significantly different, there was no prejudice to the defendant when the information was amended. Here the amended information was based on the same set of facts and there was no prejudice to the defendant. Judgment is affirmed.

_____
Justice

We concur:

_____

_____

_____
Justices

Justice Shea did not participate in this decision.

- 9 -