No. 82-124

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

AARON STARR, a/k/a FRANK WETCH,

Defendant and Appellant.

Appeal from:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Overfelt Law Firm; Gary Overfelt, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Harold F. Hanser, County Attorney, Billings, Montana

Submitted:   March 24, 1983

Decided:   May 31, 1983

Filed: **MAY 3 1 1983**

*Ethel M. Harrison*
_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Aaron Starr was convicted upon jury trial in the District Court, Thirteenth Judicial District, Yellowstone County, Montana, on one count of felony sale of dangerous drugs, and one count of felony attempt (theft). He was sentenced to 15 years at the Montana State Prison, with the last 7 1/2 years suspended.

We reverse his conviction for felony sale of dangerous drugs and dismiss that count against him; we affirm his conviction for felony attempt (theft). We remand the cause to the District Court for resentencing on his conviction of felony attempt (theft).

I.

THE CONVICTION FOR SALE OF DANGEROUS DRUGS

Starr, sometimes known as Frank Wetch, accompanied by a man named Russell, met with Howard Pederson (an undercover agent employed by the Yellowstone County Criminal Investigation Division) on September 13, 1981. Starr offered to sell Pederson one pound of "cocaine for $30,000." Pederson declined saying he was only interested in purchasing 11 pounds of cocaine. However, Pederson performed two "field tests" on the substance offered. The first test was negative, the second test was positive. A positive test does not necessarily indicate that the substance is cocaine, since the results can be positive for several substances, including lidocaine, a prescription drug, not defined as a dangerous drug under section 50-32-101, MCA. Pederson told Starr that he was not interested in purchasing the substance on that date, but stated he would buy 5 kilos on a subsequent date.

2

Starr and his wife testified that the substance offered for sale on September 13, 1981, was in fact lidocaine and not cocaine.

The grounds on which we reverse Starr's conviction for felony criminal sale of dangerous drugs (the offer to sell of September 13, 1981) are that the evidence is not sufficient beyond a reasonable doubt to sustain his conviction under the statute defining the offense, and that error occurred in the instructions.

Section 45-9-101, MCA, provides in part:

"(1)   A person commits the offense of criminal sale of dangerous drugs if he . . . offers to sell . . . any dangerous drug as defined in 50-32-101."

To sustain the conviction of Starr on an offense under this statute, the State was required to prove that (1) Starr (2) offered to sell (3) a defined dangerous drug.   The statute, in its form at the time of this alleged offense, does not include the offer of sale of a look-alike drug such as lidocaine.

The State must prove beyond a reasonable doubt every element of the crime charged.   State v. Hamilton (1980), _____ Mont. _____, 605 P.2d 1121, 37 St.Rep. 70.

Under the testimony of the chemist for the state crime laboratory, a witness produced by the State, it is clear that the field tests used by Pederson on September 13, 1981, to test the substance that was being offered for sale, would yield a positive blue color, whether the substance was cocaine or lidocaine:

"Q.   Now lidocaine obviously gives a positive blue color in a field test kit, doesn't it?   A.   Yes.

"Q.   Are you familiar with the quality or brightness of blue the lidocaine would show as compared with cocaine?   A.   Yes.

3

"Q. And will you give us that? A. The experience I have is that cocaine will give a brighter blue, but a fairly strong concentration of lidocaine will give about the same precipitate as a weaker concentration of cocaine, so there is no real way by looking at the test that you can tell for sure what's there or what concentration." Tr. at 148-149.

Other than the field tests, there was no proof offered by the State as to the nature of the substance that Starr was offering for sale on September 13, 1981. Such lack of proof as to the exact nature of the substance offered by Starr differentiates this case from State v. Dunn (1970), 155 Mont. 319, 332, 472 P.2d 288. In Dunn, although the State was not able to produce the substance sold by the defendant Dunn because his two recipients had swallowed the substance, their testimony as to the effect of the drugs on them and their hallucinations for a considerable period of time thereafter sufficed to prove that the substance which the defendant had sold or offered to sell was actually LSD.

In this case, the State produced circumstantial evidence through the field tests administered by Pederson that the substance offered may have been cocaine; its subsequent evidence indicates also that the substance may have been lidocaine. The rule in Montana is that to justify a conviction on circumstantial evidence, the facts and circumstances must not only be entirely consistent with the theory of guilt, but must be inconsistent with any other rational theory. State v. Stoddard (1966), 147 Mont. 402, 412 P.2d 827.

We therefore hold that the evidence is not sufficient beyond a reasonable doubt to sustain Starr's conviction on the offer to sell dangerous drugs.

4

Starr also relies in this appeal on error in the instructions regarding the charge of the criminal sale of dangerous drugs.

In pertinent part, the District Court instructed the jury:

"Instruction no. 10:

"A person commits the offense of criminal sale of dangerous drugs if he sells, barters, exchanges, gives away, or offers to sell, barter, exchange, or give away, or manufactures, prepares, cultivates, compounds or processes any dangerous drug as defined by law.

". . .

"To convict the defendant of the crime of Criminal Sale of Dangerous Drugs, the State must prove beyond a reasonable doubt that the defendant sold a dangerous drug as defined by law, or that the defendant sold what he believed to be a dangerous drug.. . . (Emphasis added.)

". . .

"Instruction no. 12:

"If you find that the defendant offered for sale or sold what he believed to be a dangerous drug, you must find him guilty regardless of whether or not the substance was in fact a dangerous drug. (Emphasis added.)

". . .

"Instruction no. 17:

"A dangerous drug, as defined by the Montana Code Annotated, does not include Lidocaine."

In instruction no. 9, the court instructed the jury with respect to each of the four counts with which Starr was originally charged, that "the State must prove beyond a reasonable doubt that each element of each offense was committed or perpetrated purposely or knowingly by the defendant as a voluntary act."

In the same instruction, instruction no. 9, the court defined the terms "purposely" and "knowingly," in the

5

language of the respective statutes defining the same. Section 45-2-101(58), MCA [purposely]; section 45-2-101(33), MCA [knowingly].

The defendant offered his proposed instructions no. 20 and 22 as follows:

"Defendant's proposed instruction no. 20:

"A person commits the offense of criminal sale of dangerous drugs if he:

"1.     Knowingly or purposely sells, barters, exchanges, gives away or offers to sell, barter, exchange or give away or manufactures, prepares, cultivates, compounds, or processes any dangerous drugs; and

"2.     Knows that the substance is a dangerous drug.

". . .

"Defendant's proposed instruction no. 22:

"To sustain the charge of criminal sale of dangerous drugs, the State must prove the following propositions:

"1.     That the Defendant purposely or knowingly sold, bartered, exchanged or gave away a dangerous drug; or

"2.     The Defendant offered to sell, barter, exchange or give away a dangerous drug; or

"3.     The Defendant manufactured, prepared, cultivated, compounded or processed any dangerous drug; and

"4.     The Defendant knew that the substance was in fact a dangerous drug." (Emphasis added.)

It will be seen by the instructions given and refused as above set out that the court instructed the jury that Starr could be convicted of the crime of offering to sell dangerous drugs if he believed the substance he was offering was a dangerous drug; while, under the instructions offered by Starr, he could not be convicted of the crime of offering to sell dangerous drugs unless he knew that the substance offered was in fact a dangerous drug.

6

Starr contends that the count charging him with offering to sell dangerous drugs required the State to prove as an element of the offense his specific intent to transfer then or in the future a dangerous drug. The State, on the other hand, contends that Starr's assertion that the substance offered for sale must in fact be a dangerous drug is a narrow reading of the statute defining "offer for sale" as a crime, a reading not compelled by the language or purpose of the statute, nor by any general policy of Montana's criminal law.

Of course it is the duty of the District Court to instruct the jury on every issue or theory having support in the evidence. State v. Thomas (1966), 147 Mont. 325, 413 P.2d 315. In determining whether to give an instruction, the inquiry of the District Court must only be whether any evidence exists in the record to warrant an instruction on the theory or issue submitted. See State v. Buckley (1976), 171 Mont. 238, 242, 557 P.2d 283; State v. Taylor (1973), 163 Mont. 106, 515 P.2d 695. Conversely, when no evidence exists to support a submitted instruction, such form of instructions should not be given. An example is State v. Buckley, supra, where the District Court had withdrawn an instruction on mitigated deliberate homicide, this Court approved the withdrawal on the ground that there was no evidence in the cause upon which the court could have submitted the lesser-included offense of mitigated deliberate homicide.

Here, there was no evidence that Starr believed that he was in fact offering cocaine for sale. To that extent, there was instructional error in this cause, since the instruction had no foundation in the evidence.

We do not agree with Starr, however, on his contention that it was the duty of the State to prove Starr's specific

7

intent to transfer a dangerous substance then or at a subsequent time. Since Montana revamped its criminal statutes in 1973 by adopting in essence the Model Penal Code, specific intent is not an elemental concept, unless the statute defining the defense requires as an element thereof a specific purpose. (Examples of "duel intent" statutes: section 45-5-303, MCA (aggravated kidnapping); section 45-6-204, MCA (burglary); section 45-6-301, MCA (theft).) State v. Klein (1976), 169 Mont. 350, 547 P.2d 75.

Section 45-9-101, MCA, defining criminal sale of dangerous drugs, has no internal requirement of mental state as an element of the crime. It is therefore subject to section 45-2-103, MCA, providing generally for mental states. That statute requires that with respect to each element described by the statute defining an offense, the defendant must have one of the mental states described as "purposely," "knowingly," or "negligently." Sections 45-2-101(33), (37), (58), MCA.

"Negligence," or "negligently" is not a mental state applicable here to the crime of sale of dangerous drugs, but the mental states of purpose (or purposely,) or knowledge (or knowingly,) do have application. A person acts purposely with respect to a result or to conduct described by a statute defining an offense if it is his conscious object to engage in that conduct or to cause that result. Section 45-2-101(58), supra. Thus a person acting purposely to sell or to offer to sell what he believed to be a dangerous drug would have the requisite purpose to engage in the conduct or to cause the result that is defined by the statute on criminal sale of dangerous drugs. A person selling lidocaine or offering to sell lidocaine, believing it to be cocaine,

8

would have the requisite purpose to constitute the mental state required to commit the crime of sale of dangerous drugs. In effect, we held so in State v. Hendricks (1970), 171 Mont. 7, 555 P.2d 743.

Occasionally, this Court has referred to "specific intent" in discussing mental states since the adoption of the 1973 Criminal Code. Parties and attorneys should not be misled. It is well to keep in mind the provisions of the Montana Criminal Code as explained by Essman, A Primer on Mental State in the Montana Criminal Code of 1973, 37 Mont.L.Rev. 401, 403-404 (1976):

> "The Montana code uses only three classifications in evaluating the defendant's mental state: purposely, knowingly, and negligently. These mental state classifications are defined in relation to four objectively measurable conditions or occurrences: conduct, circumstances, facts, and result. However, all four criteria do not apply to each mental state. 'Purposely,' which means with a conscious objective, relates to conduct or result. 'Knowingly,' defined as 'awareness,' relates to conduct, circumstances, facts or result. 'Negligently,' relates only to circumstances and result. Thus, two functions are performed in analyzing the statute which describes an offense. First, determining which mental state must be proved, and second, determining to which of the four conditions or occurrences the mental states relate."

In this case, with respect to the "offer to sell" charge against the defendant, the mental state "purposely" or "knowingly" was required to be proved by the State. "Purposely" relates to conduct or result. Under that test, if defendants conscious objective was to offer to sell a dangerous drug, or to result in a sale of a dangerous drug, the mental state element of the crime would have been satisfied. If Starr had in fact believed that the substance he was selling or offered to sell was cocaine, the mental state test of purpose would have been met.

9

Starr also contended in his appeal that the statute under which he was charged with offering to sell dangerous drugs is unconstitutionally vague. Starr's constitutional argument was predicated upon the refusal of the District Court to apply the holding in State v. Anderson (1972), 159 Mont. 344, 498 P.2d 295, to this case. In Anderson, where the defendant had been charged with "wilfully, unlawfully and feloniously selling a stimulant drug" this Court reversed his conviction upon the ground that a required element for the State to prove in connection with the crime was that the defendant, an osteopath, had knowledge that the "diet pills" which he had sold did in fact contain an ingredient of a dangerous drug. Starr contends that under Anderson, he was entitled to his offered instructions no. 20 and 22 which are set out previously. Starr argues that since knowledge under Anderson is necessary to prove an actual sale of dangerous drugs, the statute is unconstitutionally vague if under a charge of offering to sell drugs, a defendant's belief that the substances he is offering are dangerous drugs is sufficient for conviction.

We have disposed of much of Starr's contentions with respect to constitutionality in our previous discussion on the instructions. He relies on a California case, People v. Daniels (1975), 122 Cal.Rptr. 872, 537 P.2d 1232, where the California court in passing held that an offer for sale of dangerous drugs required a showing of a specific intent on the part of the defendant. As we have stated above, Montana, since the adoption of its Criminal Code in 1973, does not concern itself with "specific intent" unless the statute defining the offense requires the finding of a special

10

purpose in addition to the mental states of knowingly or purposely committing the acts constituting the crime.

Starr is not affected in this case under our holding here because since there was no evidence of his belief that he was selling a dangerous drug, we have found it improper for the jury to be instructed as to his belief. We do determine, however, to settle the matter, that section 45-9-101, MCA, is not unconstitutionally vague when read in conjunction with the statutes supplying the necessary mental states of purposely and knowingly.

## II.

THE CONVICTION FOR FELONY ATTEMPT (THEFT)

Starr was convicted of attempt to commit felony theft. The theory of the State was that Starr attempted to obtain $95,000 by deception on September 18, 1981, by inducing Pederson to give him money in exchange for a substance which the defendant had represented to Pederson as cocaine, but which was in fact a different substance.

Following the events which we have earlier described on September 13, 1981, Starr met with Pederson and one Miller on September 16, 1981. At that time, Starr did not have 11 pounds of the substance, but Pederson had the money. Starr was allowed to see the money. He gave Pederson a sample of the material, and it was determined that the exchange would take place on September 18, 1981.

On September 17, Starr flew to Lewistown, Pennsylvania, headquarters for Pharmadex Industries, where he obtained the lidocaine (called by Starr "Keystone Incense").

Starr returned to Billings on September 18, and on that date he and a friend again met Miller and Pederson for the exchange. Starr represented the substances as cocaine.

11

Miller did a field test on each bag and told Pederson that it was positive for cocaine. An exchange took place. Pederson paid $95,000 (of which Miller took $10,000) and Pederson took the substance which was sold as cocaine.

Starr was arrested shortly thereafter and taken to the Yellowstone County courthouse for initial appearance. At that time he told the justice of the peace that he was not selling cocaine, but a compound of lidocaine and caffeine. Subsequent analysis of the material seized on September 18, 1981, confirmed that it was not cocaine but rather a compound of lidocaine and fructose, a non-controlled fruit sugar.

Starr contends that in this case he was selling the lidocaine for approximately $7,700 per pound. He contends that the street value of cocaine at the time was $100 per gram and the street value of the substance which he sold was between $18 to $19 per gram. Thus, Starr contends that he had exacted only a fair price for the lidocaine. He offered several instructions to the District Court, which were refused.

Section 45-6-301, MCA, defines felony theft by deception:

> "(2) A person commits the offense of theft when he purposely or knowingly obtains by . . . deception control over property of the owner, and:
>
> "(a) has the purpose of depriving the owner of the property . . .
>
> ". . .
>
> "(5) . . . A person convicted of the offense involving property exceeding $150 in value [is guilty of a felony]."

"Deception" is defined in section 45-2-101(17)(a), MCA, as knowingly creating, or confirming in another an impression which is false and which the offender does not believe is

12

true. As the State contends, there is no dispute in this case over the fact that the defendant committed theft by deception. The only real question is whether the State must prove when the defendant obtained a quantity of money in exchange for property represented to be fit for a particular purpose, and then delivered other property not fit for that purpose, that the value of the property delivered is more than $150 less than the value of the property promised.

The defendant relies on State v. Lagerquist (1968), 152 Mont. 21, 445 P.2d 910. In Lagerquist, the buyer contracted with the seller to deliver a quantity of hay for a certain price. The buyer determined later that the seller had failed to deliver the agreed quantity of hay. The court found evidence that the buyer had paid about $50 more than he should have, making it a felony under the statute then in effect. In Lagerquist, the deception involved the amount of the substance, not its identity. He was defrauded only to the extent that he received less than he bargained for. Here, the State is correct in its contention that Pederson bargained for cocaine, and received lidocaine. The defendant defrauded Pederson in the transaction by his deception for an amount in excess of $150. We find no merit therefore in Starr's contention that felony theft was not proved in this case, nor in the refusal by the District Court of instructions requested by Starr to sustain his contentions, nor in the refusal of the District Court to instruct the jury as to misdemeanor theft.

### III.

Accordingly, we reverse the conviction of Starr for criminal sale of dangerous drugs and dismiss that count on which he was convicted. We affirm his conviction for felony

13

attempt (theft). We remand this cause to the District Court for resentencing as to the conviction which is here affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

14

Mr. Justice Daniel J. Shea, specially concurring:

I join in the decision but simply state that this case like so many coming before this Court, hardly demonstrates that the trial courts, the prosecuting attorney, and defense lawyers, are aware of all the provisions in the criminal code bearing on the issues of purposely and knowingly and the issue of causation. See my dissent in State v. Pierce (1982), ___ Mont. ____, 651 P.2d 62, 39 St.Rpe. 1205, where many of these provisions are discussed.

_____
                  Justice