No. 87-381

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

THE STATE OF MONTANA,

        Plaintiff and Respondent,

   -vs-

KATHERINE MICHELLE BROWN,

        Defendant and Appellant.


APPEAL FROM: District Court of the Eighteenth Judicial District,
           In and for the County of Gallatin,
           The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        McKinley T. Anderson, Bozeman, Montana

    For Respondent:

        Honorable Mike Greely, Attorney General, Helena, Montana
        Betsy Brandborg, Assistant Attorney General
        Mike Salvagni, County Attorney, Bozeman, Montana
        Marty Lambert, Deputy County Attorney

    For Amicus Curiae:

        Robert M. McCarthy, Butte, Montana (County Attorneys
        Association)


                 Submitted: March 1, 1988

                 Decided: May 4, 1988

Filed: MAY 4 - 1988

*Ethel M. Harrison*
             Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Following a bench trial on May 18 and 19, 1987, before the Honorable Thomas A. Olson, in the 18th Judicial District, the defendant, Katherine Michelle Brown (hereinafter Brown) was found guilty of the criminal sale of dangerous drugs, a felony, in violation of § 45-9-101(1), MCA. Defendant appeals and we affirm.

On November 14, 1986, Officer Dave Petersen of the Bozeman Police Department was contacted by one Curt Hawley. Hawley informed Petersen that an individual named Ernest Elliot was attempting to organize the sale of a large amount of marijuana. Hawley agreed to re-contact Elliot and begin negotiations for the sale. A subsequent undercover investigation generated Brown's arrest and conviction.

Hawley and Elliot engaged in three phone conversations on November 15, 1986. Petersen monitored and recorded the conversations with Hawley's consent, but no search warrant was obtained. Elliot indicated his cousin would transport significant amounts of marijuana to the Bozeman area for sale, and Hawley indicated he had contact with a potential purchaser. Elliot explained that Hawley would need to deal with Elliot's girlfriend, defendant Brown, to complete the transaction. Brown's involvement was necessary because Elliot was scheduled to begin serving a sentence in the county jail due to a prior conviction. This arrangement was confirmed November 16, 1986, when Hawley met and spoke with both Brown and Elliot in a grocery store parking lot.

After Elliot reported to the county jail, Hawley phoned Brown on November 17, and 20, 1986 to discuss further arrangements. Both calls were monitored and recorded with Hawley's consent and no warrant was obtained. A meeting was

arranged between Brown, Hawley, and the potential purchaser. The "purchaser" was Officer Evanson of the Bozeman Police Department.

The three met on November 20, 1986, and the conversation was monitored and recorded without a warrant by using a body wire transmitting device which was attached to Evanson. Brown and Evanson discussed the purchase while in a vehicle parked in a bar parking lot. Evanson showed Brown a large amount of cash to demonstrate he was a serious buyer and agreed to purchase a large amount of marijuana when it arrived in the Bozeman area.

On November 21, 1986, Evanson checked into a local motel and phoned Brown. Brown indicated the marijuana arrived by stating a friend with a baby had come to town, and Evanson asked Brown to come to his motel room. The telephone conversation was monitored and recorded without a warrant.

Brown arrived at Evanson's room with Don Elliot, Ernest Elliot's cousin from Missouri. The ensuing conversations were again monitored and recorded without a warrant by using a body wire attached to Evanson. After a brief conversation, the three proceeded to a different local motel and the money and marijuana were exchanged. Brown was arrested shortly thereafter, along with Don Elliot and his companion, Randy Fowler.

On January 14, 1987, defendant filed a motion to dismiss her charge alleging the information was not supported by probable cause. Defendant alleged, among other things, that Hawley "illegally taped or recorded telephone conversations with the Defendant without her knowledge . . . " A District Court hearing was held February 10, 1987 and defendant's motion was denied February 26, 1987. Defendant was subsequently convicted of the criminal sale of dangerous drugs.

3

Defendant raises four issues for our consideration on appeal:

1. Was there sufficient evidence to convict defendant of the sale of dangerous drugs?

2. Did defendant receive an excessive sentence?

3. When police record telephone conversations without a warrant and with the knowledge of one but not all the participants in the conversation, are the recordings admissible in a subsequent criminal trial?

4. When police use a body wire transmitting device to record a face-to-face conversation without a warrant and with the knowledge of one but not all the participants of the conversation, are the recordings admissible in a subsequent criminal trial?

> 1. Was there sufficient evidence to convict defendant of the sale of dangerous drugs?

Defendant contends that § 45-9-101(1), MCA, requires that she actually sell or transfer a dangerous drug before she can be convicted of the crime for which she was charged. Defendant states the evidence fails to demonstrate she actually sold the marijuana. Further, she alleges she never took actual possession of the marijuana and concludes that the correct charge should have been conspiracy to sell drugs and not the actual sale of drugs.

We agree that the applicable language of § 45-9-101(1), MCA, requires that defendant sell, barter, exchange, give away, or offer to sell, barter, exchange or give away a dangerous drug. We addressed a remarkably similar issue in State v. Martinez (Mont. 1985), 700 P.2d 991, 42 St.Rep. 798. In holding there was substantial evidence to support defendant's conviction for the criminal sale of dangerous drugs we stated:

4

> "To sell [drugs] means to knowingly and intentionally transfer possession or ownership of the [drugs] to another for money or other valuable consideration. For a person to make such a sale it is not necessary that he personally handle all of the details of the transaction. It is sufficient if the transaction is arranged by him and handled by persons under his direction and is sufficient to constitute a sale if the person charged with sale is involved in the transaction by accepting, handling, or counting the money and directing the delivery of the [drugs]. In other words, the person charged with the sale does not have to personally conduct all of the various elements of delivery of the [drugs] and the transfer of the money. It is sufficient if he participates therein to such an extent that it is obvious that he is a part of the making of the sale."

Martinez, 700 P.2d at 992, 42 St.Rep. at 800 (citing, State v. Davis (Mont. 1980), 620 P.2d 1209, 1214-15, 37 St.Rep. 1958, 1964). After reviewing the record, we conclude that there is substantial credible evidence demonstrating defendant assisted in organizing and coordinating the sale and was therefore an active participant in the sale. The evidence is sufficient to support the conviction and we affirm the District Court.

2. Did defendant receive an excessive sentence?

Defendant states her sentence is excessive because the statute outlawing the sale of dangerous drugs is in fact an absolute liability offense. Section 45-9-101(1), MCA, states in part:

> A person commits the offense of criminal sale of dangerous drugs if he sells, barters, exchanges, gives away, or offers to sell, barter, exchange, or give away . . . any dangerous drug . . .

5

Since the statute requires no mental state, defendant argues it is an absolute liability offense and that pursuant to §§ 45-2-103 and -104, MCA, the maximum penalty for such an absolute liability offense is a $500 fine.

Section 45-2-104, MCA, does provide that a person may be guilty of an absolute liability offense "only if the offense is punishable by a fine not exceeding $500 or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." However, § 45-9-101(1), MCA, is not an absolute liability offense, because the State must prove that the defendant purposely or knowingly committed the offense. Section 45-2-103(1), MCA states:

> Except for deliberate homicide as defined in 45-5-102(1)(b) or an offense which involves absolute liability, a person is not guilty of an offense unless, with respect to each element described by the statute defining the offense, he acts while having one of the mental states described in subsections (33), (37), and (58) of 45-2-101.

The section provides that all elements of an offense must be performed with one of the three mental states provided for in the Montana Criminal Code. Section 45-2-101(33), MCA, defines the mental state of "knowingly" and § 45-2-101(58), MCA, defines the mental state of "purposely." The definition of "negligently" is addressed in § 45-2-101(37), MCA, and has no application to the offense of selling dangerous drugs. State v. Starr (1983), 204 Mont. 210, 218, 664 P.2d 893, 897.

In Starr, the defendant asserted that § 45-9-101, MCA, was unconstitutionally vague. This Court noted that this statute has "no internal requirement of mental state as an element of the crime." Starr, 204 Mont. at 218, 664 P.2d at 897. Therefore, we concluded that the statute was subject to

6

§ 45-2-103, MCA, providing generally for all three mental states. Despite the fact that there is no internal mental state requirement in § 45-9-101(1), MCA, the offense of criminal sale of dangerous drugs is subject to the requirements of § 45-2-103(1), MCA, and the State is thus required to prove the offense was committed either purposely or knowingly.

The evidence clearly demonstrates that defendant Brown's intention was to purposely or knowingly organize and coordinate the sale. Brown was not convicted pursuant to an absolute liability offense and the sentence of the District Court is affirmed.

> 3. When the police record telephone conversations without a warrant and with the permission of one but not all participants in the conversation, are the recordings admissible in a subsequent criminal trial?

Defendant contends that all of the recordings of telephone conversations took place with the knowledge and permission of only one of the participants in the conversation. Defendant states that these telephone recordings violate the privacy section of the Montana Constitution and should not be admissible in a later criminal trial. Defendant cites § 45-8-213(1)(c), MCA, and points out that it is a criminal offense to record conversations without the knowledge of all parties to the conversation. That subsection makes an exception for public employees performing an official duty, but defendant contends this exception is overly broad and therefore unconstitutional.

We hold that if one party to a telephone conversation freely consents, the conversation can be electronically monitored and recorded without a warrant, and the evidence obtained is admissible in a subsequent criminal trial. This

7

rule remains true even if the consenting party is an informant or a police officer. State v. Canon (Mont. 1984), 687 P.2d 705, 707-08, 41 St.Rep. 1659, 1661-62; State v. Coleman (1980), 189 Mont. 492, 502-03, 616 P.2d 1090, 1095-96; and State v. Hanley (1980), 186 Mont. 410, 608 P.2d 104. We refuse to reverse this well established rule.

Further, defendant's reliance on § 45-8-213 is misplaced. That statute defines when one violates privacy in communications and prohibits one from recording conversations without the knowledge of all participants. As noted by defendant, the statute clearly excepts "duly elected or appointed public officials or employees when the transcription or recording is done in the performance of official duty . . . " The exception applies to law enforcement officers while performing their duty. We fail to see how this exception can be declared unconstitutional because it is "overly broad." There is certainly no absolute requirement that the statute exist at all should the legislature decide to abolish it. The legislature has simply determined that such recordings should be prohibited under certain circumstances and provided for an exception which applies in this case.

> 4. If police use a body wire transmitting device to record a face-to-face conversation without a warrant and with the knowledge of one but not all the participants of the conversation, are the recordings admissible in a subsequent criminal trial?

Defendant argues that the right to privacy section of the Montana Constitution prohibits the use of body wire recordings as evidence under the facts of this case. As support, defendant cites State v. Brackman (1978), 178 Mont. 105, 582 P.2d 1216. In Brackman, police placed an electronic

monitoring device on an individual which was used to record his conversation with the defendant. No warrant was obtained and the defendant had no knowledge that his conversation was recorded. The District Court suppressed the recordings and transcriptions and this Court affirmed. The majority held there was no violation of defendant's right to be free of unreasonable searches and seizures, but that the use of the recording as evidence would violate the right to privacy granted by the Montana Constitution.

We now hold that warrantless consensual electronic monitoring of face-to-face conversations by the use of a body wire transmitting device, performed by law enforcement officers while pursuing their official duties, does not violate the right to be free of unreasonable searches and seizures nor the privacy section of the Montana Constitution. The consent must be clearly obtained from at least one party to the conversation and must be freely made and without compulsion. Evidence obtained by such monitoring is admissible in a subsequent criminal trial. As in the case of telephone recordings, the consenting party may be an informant or a police officer. To this extent, the Brackman case is specifically overruled.

In the past, the rules regarding electronic monitoring in Montana have not been entirely clear. Partially, the confusion is present because there is no firm agreement as to whether electronic eavesdropping should be analyzed under Montana's constitutional right to privacy, search and seizure law, or some combination of the two. Additionally, there is virtually no Montana statutory authority directing the procedures followed by law enforcement personnel.

In the Brackman case we analyzed and considered whether participant electronic monitoring violates the Fourth Amendment to the United States Constitution. After an

9

analysis of the United States Supreme Court decisions regarding this topic, we concluded that when at least one party to the monitored conversation freely consented to the monitor, there was no impermissible search or seizure under the Fourth Amendment. Brackman 178 Mont. at 112, 582 P.2d at 1220.

Currently, there is no need to alter this portion of the Brackman case, and there are strong indications that this conclusion is more certain today. In determining that there was no Fourth Amendment violation, this Court relied on U.S. v. White (1971), 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453. The White case addressed the issue of whether the Fourth Amendment barred from evidence the testimony of governmental agents who related certain conversations which occurred between the defendant and a government informant and which the agents overheard by monitoring a radio transmitter carried by the informant. In a plurality opinion, Justice White stated the monitoring did not violate the defendant's right to be free of unreasonable searches and seizures. The precedential value of White is often attacked because it was a plurality opinion. However, despite the passage of seventeen years, White has not been reversed. Since that time, the United States Supreme Court has stated:

> [N]either the Constitution nor any act of Congress requires that official approval be secured before conversations are overheard or recorded by Government agents with the consent of one of the conversants.

U.S. v. Caceres (1979), 440 U.S. 741, 744, 99 S.Ct. 1465, 1467, 59 L.Ed.2d 733, 738 (addressing the admissibility of consensual recordings made by an Internal Revenue Service agent that failed to observe and comply with Internal Revenue Service regulations). Additionally, "all eleven Circuit

10

Courts of Appeals have accepted White as constitutional authority for the principle that search warrants are not required to authorize consensual interceptions . . . " C. Fishman, Wiretapping and Eavesdropping, § 9, at 17 (1978). Warrantless consensual electronic monitoring of face-to-face conversations does not violate the Fourth Amendment to the United States Constitution.

The Montana Constitution also provides that the people shall be free from unreasonable searches and seizures. Mont. Const. Art. II, § 11. Although the language of this provision is nearly identical to that contained in the Fourth Amendment to the United States Constitution, we recognize that such a provision in the Montana Constitution may be interpreted so as to provide a greater amount of rights than that contained in the Federal Constitution. See, State v. Johnson (Mont. 1986), 719 P.2d 1248, 1254-55, 43 St.Rep. 1010, 1016-17; and Butte Community Union v. Lewis (Mont. 1986), 712 P.2d 1309, 1313, 43 St.Rep. 65, 70. Additionally, the Montana Constitution provides that the right of individual privacy shall not be infringed without the showing of a compelling state interest. Mont. Const. Art. II, § 10. There is no similar textual language in the United States Constitution and we have therefore recognized that this section grants rights beyond that inferred from the United States Constitution. See generally, Montana Human Rights Division v. City of Billings (1982), 199 Mont. 434, 649 P.2d 1283. Because Montana's Constitutional protections have an existence which is separate from the Federal Constitutional protections it is necessary to offer an independent analysis of the privacy and search and seizure provisions of the Montana Constitution.

"Where no reasonable expectation of privacy exists, there is neither a 'search' nor a 'seizure' within the

contemplation of . . . Article II, Section 11 of the Montana Constitution." State v. Bennett (1983), 205 Mont. 117, 121, 666 P.2d 747, 749. There must be some violation of a reasonable expectation of privacy before the provision applies. In the case at hand, the defendant Brown claimed an actual or subjective expectation of privacy, because she personally expected her conversations with the undercover officer to be private. However, it must also be determined whether her expectation was reasonably justifiable. We conclude that a defendant has no reasonably justifiable expectation that statements made to another will be kept private by that person. Therefore, the facts of this case present no unreasonable search or seizure within the contemplation of the Montana Constitution.

The analysis however must go further because the framers of the Montana Constitution specifically provided an additional protection with the right to privacy provision. Due to the sensitive nature of this issue, we must consider more than just the defendant's reasonable expectation of privacy because such a test offers no more than that provided by Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. Katz specifically notes that the "general" right to privacy is left largely to the law of the individual states. 389 U.S. at 350-51.

Commentators have suggested that this Court consider "whether the area to be searched or the object to be seized is owned or possessed" by the defendant. Elison and NettikSimmons, Right of Privacy, 48 Mont.L.Rev. 1, 26 (1987). The "object" to be seized in this case is the conversation between the defendant and the undercover officer. It is logically difficult to strictly characterize the defendant's possessory interest in her conversation with the officer. We conclude that both participants had an equal interest in the

12

conversation and that either could consent to the monitoring. Additionally, despite the fact that we have already determined the defendant had no reasonably justifiable expectation of privacy, we must also consider whether the government activity in this case is excessively intrusive. This additional consideration is needed because a defendant may have his reasonable expectation of privacy distorted by excessively intrusive government activity. In other words, the very fact that the government is acting in an overly intrusive manner may distort or obliterate any reasonable expectation of privacy. See, e.g., Smith v. Maryland (1979), 442 U.S. 735, 740-41, n. 5, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 227. However, the warrantless consensual electronic monitoring in this case was not excessive. The unsolicited incriminating statements by Brown were freely spoken to the undercover officer as she attempted to coordinate the sale. Defendant Brown simply mistakenly placed her trust in the officer and we refuse to conclude that the recording of her words was excessively intrusive.

There is no question that the undercover officer could testify as to the oral incriminating statements made to him by Brown. Logically, the recording of these statements by the officer and the introduction of the recording in evidence, with proper foundation at the trial, is equally admissible as the officer's testimony of what oral statements had been made by Brown. The recorded statements would be more reliable than the recall of the witness as to what had been said to him.

To summarize, we hold there is no violation of Montana's right to privacy, or the prohibition against unreasonable searches and seizures, when law enforcement officers pursing their official duties perform warrantless consensual electronic monitoring of face-to-face

13

conversations. It is important to stress that this holding does not open the floodgates to create an Orwellian society, and that the individual is not left without protections against inappropriate electronic eavesdropping. Section 45-8-213, MCA, still makes it a criminal offense to record a conversation without the permission of all participants unless an exception provided within the statute applies. Additionally, warrantless monitoring of any conversation without the permission and consent of one participant is strictly prohibited by both the United States and Montana Constitutions.

For the foregoing reasons, the judgment of the District Court is affirmed in all respects.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

14

Mr. Justice William E. Hunt, Sr., dissenting:


I dissent with the majority regarding issues 3 and 4. Current federal law on the subject of telephone recordation and wiretapping apparently mandates the result of the majority but this trend of blatant disregard for the right of privacy that has developed in recent years gives me pause.

In this decision, the majority overrules State v. Brackman (1978), 178 Mont. 105, 582 P.2d 1216, in which this Court held that a warrantless recording of a conversation consented to by one party but not the defendant was inadmissible as evidence because it violated the right to privacy guaranteed by the Montana Constitution.

As a rationale for this about-face, the majority explains that the defendant had no reasonably justifiable expectation of privacy in her conversations with the undercover officer. Additionally, holds the majority, since the defendant's "interest" in keeping the conversation private is equal to the officer's interest in revealing the conversation, the officer's consent was enough to satisfy the protections of the right of privacy provision in our state constitution. I disagree with both these contentions.

First, by finding that a defendant "has no reasonably justifiable expectation that statements made to another will be kept private by that person" the majority ostensibly abolishes the requirement of a search warrant to record any and all conversations between any persons if one party is a government agent and consents. I believe if the average citizen was asked whether the Montana Constitution gave him the right to expect his conversations with other people to be kept private, the answer would be a resounding "yes!"  A

recent case decided by the Superior Court of Pennsylvania makes a convincing argument that the consent of a government participant in a conversation to the recordation or electronic monitoring of that conversation should not be the guidepost by which we measure the constitutionality of admitting that recording into evidence.

> In the Commonwealth of Pennsylvania, no citizen should have to expect that the government may immediately and irrevocably seize his private thoughts every time he voices them to another person. Moreover, whatever the distinction between electronic eavesdropping done without consent and electronic eavesdropping done with the consent of a government informant, it does not support a rational conclusion that the first practice is a government "search and seizure" into the speaker's protected zone of privacy while the second practice is not.

Commonwealth v. Schaeffer (Pa. Super. 1987), 536 A.2d 354, 360.

Second, the majority attempts to characterize the defendant's conversation as an "object" in which she has some kind of possessory interest. I agree with the majority's statement that it is logically difficult to characterize a conversation as something in which the defendant has a possessory interest. However, I disagree with the majority's assertion that the officer and the defendant had "equal" interests in the conversation. The officer's interest in the conversation is to obtain enough incriminating evidence to give him probable cause to arrest the defendant for a crime. At his disposal in this endeavor is the whole arsenal of the government's law enforcement weaponry. The provisions of the state constitution were designed to protect citizens from abuse and misuse of this arsenal. To state that the defendant has an equal interest is to state that she has no

interest and consequently no protection from governmental intrusion.

Although the majority seems to have harmonized Montana law in this area with the federal trend it does a disservice to the citizens of this state by ignoring the greater right of the individual to exclude unreasonable impositions by the government recognized by Art. II, § 10, of our state constitution. The majority found that the defendant had no reasonably justifiable expectation of privacy in this situation. After this conclusion, how could it find any protection under the state constitution's right to privacy provisions? The answer is it couldn't.

The majority feels constrained by the decisions of the United States Supreme Court. But this state, through the adoption of the right to privacy provision of our state constitution, has elected to give Montana citizens even greater guarantees of privacy than the federal constitution gives. Why the majority chooses to ignore this explicit guarantee puzzles me. The decision is particularly puzzling in light of the fact that this is not a case in which there was no time to obtain a warrant. Even if getting a warrant in these types of cases becomes a perfunctory exercise, it should be done so as to at least acknowledge the rights of the individual in such a situation. Requiring a warrant may also insure the documentation and availability of a recording which actually exculpates a defendant.

The language of the opinion is broad enough to allow conversations between a defendant and his attorney or other privileged conversations to be recorded without the consent of the defendant and to be allowed into evidence. It can be assumed that the majority does not really intend to abrogate

the rule concerning privileged communications. But it is expansive language such as this that provides the hammer and chisel for the chipping away of rights guaranteed by the Montana Constitution.

The decision made today is indeed a sad one for the citizens of the state of Montana. The majority may have unwittingly opened the doors for the erosion of any protection the privacy clause gives individuals of this state. The result may be required by the current posture of federal law but it certainly was not intended by the framers of our state constitution.

_____
Justice