DA 07-0217

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 101

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

JOE TRUJILLO,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 06-226,
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Richard R. Buley, Tipp & Buley, Missoula, Montana

      For Appellee:

      Honorable Mike McGrath, Attorney General; Mark W. Mattioli,
Assistant Attorney General; Vincent Pavlish, Legal Intern,
Helena, Montana

      Fred Van Valkenburg, County Attorney; Patricia Bower, Deputy
County Attorney, Missoula, Montana

Submitted on Briefs:  January 29, 2008

Decided:  March 25, 2008

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Joe Trujillo (Trujillo) appeals the judgment and order of the Fourth Judicial District Court, Missoula County, convicting him of criminal trespass to property, a misdemeanor. We affirm.

¶2 The sole issue on appeal is whether there was sufficient evidence to sustain Trujillo's conviction of criminal trespass.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On November 6, 2005, Joe Trujillo and his son were hunting on and around property owned by Art Hancock (Hancock) just north of Interstate 90 near Clinton, Montana. Trujillo and his son had Hancock's permission to hunt on Hancock's property using Trujillo's four-wheeler, and were also instructed by Hancock that they could hunt on another neighbor's property and on land behind Hancock's which was owned by Plum Creek Timber. Hancock simply told Trujillo not to take his four-wheeler through any gates.

¶4 Three roads lead from Hancock's property onto Plum Creek property, none of which were gated or posted on the day in question. However, two main roads leading onto Plum Creek property from the opposite direction were gated, and at least one also had a sign forbidding the use of ATVs year round. The evidence established that Plum Creek had an "open lands" policy with respect to public recreation on the subject property. That policy allows the public to recreate anywhere on Plum Creek property by foot, but vehicles such as four-wheelers are only permitted on "open roads." Plum

2

Creek's policy does not permit off-road vehicle use or vehicle use on roads closed by a gate, a barrier, or other methods.

¶5    It is undisputed that Trujillo and his son were driving a four-wheeler on Plum Creek property on November 6, 2005. Stephen Kamps (Kamps), who owned property neighboring Plum Creek's and was concerned about the number of four-wheelers in the area, testified that he saw two individuals on a four-wheeler ride by on Plum Creek property in the morning. About an hour later, he saw two individuals walking on Plum Creek property and believed it to be the same individuals. Kamps went looking for their four-wheeler and found it parked on Plum Creek property, apparently not on a road. Kamps took two photographs of Trujillo's four-wheeler where it was parked. The pictures are close-up shots of Trujillo's four-wheeler which the District Court found depict the four-wheeler off-road.

¶6    Upon returning to Hancock's property at the end of the day and being questioned by Derek Schott (Schott), a Montana State Game Warden who was in the area, Trujillo indicated that he and his son had been hunting on what appeared to Schott to be Plum Creek property. Schott received an email from Kamps shortly thereafter with the pictures of Trujillo's four-wheeler; Kamps reported that he took the pictures on Plum Creek property. Schott forwarded the information he had to the Missoula County Attorney's office, which charged Trujillo with misdemeanor criminal trespass.

¶7    The case was tried in Justice Court without a record, and Trujillo was found guilty by a jury. Trujillo then appealed to the District Court for a trial de novo. At trial, Trujillo admitted that he did not have a map or GPS device with him while he was hunting, and

3

could not say for sure on whose property he was hunting that day. He also admitted it is a hunter's responsibility to know where he is at all times. Trujillo was adamant, however, that he did not pass through any gates or barriers, in accordance with Hancock's instructions. After the bench trial, Trujillo was found guilty of criminal trespass. The District Court observed that one of the photographs of Trujillo's four-wheeler "doesn't show this four-wheeler on any road. And the testimony was that four-wheelers are not allowed on Plum Creek ground off the road." The District Court also found Kamps' testimony credible that Kamps had seen Trujillo's four-wheeler pass by him in the morning, and then parked later in the day, both times on Plum Creek property. Trujillo appeals his conviction.

## STANDARD OF REVIEW

¶8 "A District Court's conclusion as to whether sufficient evidence exists to convict is ultimately an analysis and application of the law to the facts, and as such is properly reviewed de novo." *State v. Swann*, 2007 MT 126, ¶ 19, 337 Mont. 326, ¶ 19, 160 P.3d 511, ¶ 19. "We review the sufficiency of the evidence to convict a defendant to determine whether, on viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. Gladue*, 1999 MT 1, ¶ 34, 293 Mont. 1, ¶ 34, 972 P.2d 827, ¶ 34 (citations omitted). "The credibility of witnesses and the weight to be given to their testimony are determined by the trier of fact, and disputed questions of fact and credibility will not be disturbed on appeal." *State v. Gardner*, 2003 MT 338, ¶ 29, 318 Mont. 436, ¶ 29, 80 P.3d 1262, ¶ 29 (citation omitted).

¶9     Citing our recent decision in *Swann*, the State argues that de novo review of sufficiency of the evidence claims is problematic because it does not provide for deference to the trier of fact and will generate an increase in sufficiency of the evidence claims.  However, we disagree with the State's argument that our newly stated de novo review of whether a conviction is supported by sufficient evidence is in conflict with our traditional appellate deference to the trier of fact.  The deference we give to the fact-finder includes its determinations of weight and credibility of the evidence, viewing that evidence in a light most favorable to the prosecution.  Our de novo review applies to the district court's conclusion of law—the point at which the State's evidence is applied to the elements of the crime charged.  In other words, we apply a de novo review to determine whether the facts, as established by the evidence presented by the State, were sufficient to support the district court's conclusion that the charged offense was committed.

## DISCUSSION

**¶10    Did sufficient evidence support Trujillo's conviction for criminal trespass?**

¶11    "[A] person commits the offense of criminal trespass to property if the person knowingly . . . enters or remains unlawfully in or upon the premises of another."  Section 45-6-203(1)(b), MCA (2005).

> A person enters or remains unlawfully in or upon any . . . premises when he is not licensed, invited, or otherwise privileged to do so.  Privilege to enter or remain upon land is extended either by the explicit permission of the landowner or other authorized person *or by the failure of the landowner or other authorized person to post notice denying entry onto private land*.

5

Section 45-6-201(1), MCA (emphasis added). Effective posting of private land requires that notice "be placed on a post, structure, or natural object by marking it with written notice or with not less than 50 square inches of fluorescent orange paint," and "the notice . . . must be placed at each outer gate and normal point of access to the property." Sections 45-6-201(2)(a) and (b), MCA. Property posted "in substantial compliance with subsection (2) . . . is considered closed to public access." Section 45-6-201(4), MCA.

¶12    "[A] person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when the person is aware of the person's own conduct or that the circumstance exists." Section 45-2-101(35), MCA. "It is well recognized in Montana that one need not form the intent to commit a specific crime or to intend the result that occurred to be found guilty of knowingly committing a crime." *State v. Blalock*, 232 Mont. 223, 225, 756 P.2d 454, 456 (1988). Thus, the State was required to prove (1) that Trujillo knowingly entered the property by being "aware of [his] own conduct" when he drove his four-wheeler on Plum Creek property, and (2) that Trujillo was not extended explicit permission and the land was effectively posted. The State was not required to prove that Trujillo knew he was trespassing or intended to do so.

¶13    The District Court relied on our holding in *Blalock* to conclude that Trujillo "knowingly" entered upon Plum Creek property on November 6, 2005. In *Blalock*, the defendant was traveling on a public highway when he saw some structures he thought looked like beehives on land running adjacent to the road. Blalock exited the highway and passed through an open gate adorned with a rectangular sign painted florescent orange. *Blalock*, 232 Mont. at 224, 756 P.2d at 455. Blalock did not know the orange

6

sign constituted legal notice of no trespassing. After satisfying his curiosity about the beehives, he was stopped by the landowner, who called the sheriff. Blalock was cited for criminal trespass. *Blalock*, 232 Mont. at 225, 756 P.2d at 455.

¶14 At trial, Blalock contended that he did not have the requisite mental state of "knowingly" because he was unaware that the orange sign meant no trespassing. He claimed that this constitutes a "mistake of fact that provides a defense that prevents him from being found to have the requisite mental intent to knowingly enter the land unlawfully." *Blalock*, 232 Mont. at 225, 756 P.2d at 456. We disagreed, observing that "one need not form the intent to commit a specific crime or to intend the result that occurred to be found guilty of knowingly committing a crime." *Blalock*, 232 Mont. at 225, 756 P.2d at 456. We also observed that "ignorance of the law has never been a defense in Montana." *Blalock*, 232 Mont. at 225, 756 P.2d at 456. "Blalock had legal notice that the land he entered was off-limits to trespassers." *Blalock*, 232 Mont. at 226, 756 P.2d at 456.

¶15 The present case is similar to *Blalock*, even though Trujillo did not pass by any gate or posted notice against trespassing. Trujillo was unaware that the main access points to Plum Creek property, which were on the other side of the ridge from where he entered, effectively posted notice against the use of four-wheelers on Plum Creek property, but he was nonetheless responsible for knowing about those postings and was on legal notice of their existence. In addition, Trujillo's reliance on Hancock's erroneous instruction that he should not pass through any gates does not excuse the fact that he was trespassing. Just as Blalock, ignorant of the meaning of the orange sign, improperly

7

assumed he was permitted to enter private property, Trujillo improperly assumed, relying on Hancock, that he could enter Plum Creek property as long as he did not pass a gate. Once again, ignorance of the law is no defense in Montana, even if it is in reliance on what someone else has said. We conclude that the District Court did not err by concluding that Trujillo knowingly entered Plum Creek property.

¶16 With respect to Plum Creek's posting of its property, Art Pensak (Pensak), the managing forester for the area of Plum Creek property above Hancock's land, testified that the two main access points into that area of Plum Creek property had gates across them. In addition, a sign exhibited Plum Creek's "open lands" policy, demonstrating that Plum Creek permitted foot traffic year-long, but not off-road vehicle use. Plum Creek's policy also did not allow vehicles on roads closed by a gate or barrier. Photographs of the two gates, and a sign exhibiting Plum Creek's policy, were admitted as exhibits at Trujillo's trial. Pensak acknowledged that some small roads leading onto Plum Creek property were not gated by Plum Creek, although at least one had been gated by another private landowner, and several had Kelly-humps blocking the road.

¶17 Trujillo argues that he never went through any gates or Kelly-humps and always complied with Hancock's instruction not to do so. None of the roads leading from Hancock's property were gated, and while Trujillo acknowledges that certain roads leading to Plum Creek property may have been gated, he points out that he "would never have encountered the gates [or] seen them: as they were located in a completely different drainage and off a completely different road than Mr. Trujillo traveled." According to Trujillo, the roads he used to access Plum Creek property should also be considered

8

"normal point[s] of access" under § 45-6-201(2)(b), MCA, and because they were not gated, he was lawfully on Plum Creek property. Trujillo also notes that because he met a truck coming down a road which he was traveling up, the road "was obviously a public road."

¶18 The District Court considered the evidence and apparently determined that the points Trujillo used to access Plum Creek property were remote and not required to also be posted, or at least "substantially complied" with the posting requirements of § 45-6-201(2)(a) and (b), MCA. Section 45-6-201(4), MCA. Giving deference to that factual finding, it is apparent that Trujillo was on Plum Creek's roads with his four-wheeler despite their being posted and gated at the main access points. Thus, Trujillo violated the scope of Plum Creek's "open lands" policy by four-wheeling on roads not open to the public.[1] However, even if the roads Trujillo traveled could be considered "public roads," the District Court found Kamps' testimony credible that Trujillo's four-wheeler was not parked on a road, thereby also violating Plum Creek's "open lands" policy against off-road use. Either way, the District Court did not err by concluding that Plum Creek's property was effectively posted against the use of four-wheelers, and accordingly, that Trujillo was trespassing.

¶19 Affirmed.

/S/ JIM RICE

---

[1]We note that Plum Creek's posted notice prohibited *any* use of four-wheelers year-round, whether on open roads or otherwise. However, the State relied upon the more lenient "open lands" policy as testified to by Pensak.

9

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER