Justice Dirk Sandefur delivered the Opinion of the Court.
***124 ¶ 1 Barry William Mills appeals from the judgment of conviction of the Montana Tenth Judicial District Court, Fergus County, on jury verdicts on the offenses of felony theft and misdemeanor theft, as defined by § 45-6-301(1), MCA. We affirm.
¶ 2 We address the following restated issues:
1. Whether the District Court erroneously denied Mills's pretrial and post-verdict motions to dismiss based on the unqualified principle that a claim of right precludes a purposeful deprivation of property under § 45-6-301(1), MCA ?
2. Whether the District Court erroneously failed to instruct the jury on the claim-of-right defense?
3. Whether the District Court erroneously allowed the State to present expert testimony on matters of law?
***125 FACTUAL AND PROCEDURAL BACKGROUND
¶ 3 Barbara Cozzens lived on a 13-acre property owned by her mother in Lewistown, Montana. She kept various animals on the property including 13 horses, 7 cows, 9 cats, and some goats. In the fall of 2011, after securing a job in Wyoming, Cozzens needed a caretaker for her animals and property during the winter months until she could make other arrangements. In early October, Cozzens posted an internet ad for a caretaker to perform various animal and property care for an estimated 2-3 hours per day in *837 return for rent-free housing in her home. Mills responded to the ad from Florida and he and Cozzens subsequently negotiated an agreement by email. Mills would drive his motorhome to Montana from Florida and would then perform various daily, weekly, and monthly tasks specified on a list that Cozzens would subsequently provide. In return, Cozzens would allow Mills to live in her home rent-free, stock-up on necessary supplies, and set up an expense account with a third-party vendor to allow Mills to obtain other necessary supplies at Cozzens's expense. Cozzens would also pay for various utilities, including electricity and propane, while Mills would pay for desired internet service. The parties generally discussed the possibility of Mills performing various handyman projects for additional payment on a by-job basis if interested, but reached no agreement about any specific projects.
¶ 4 Over the next two months prior to Mills's arrival in Montana, he and Cozzens exchanged dozens of emails and text messages reflecting tension between them about the terms of their agreement and their respective assumptions and expectations in regard thereto. Because she was in a bind, Cozzens stuck to the agreement despite what she later characterized as "red flags." After some confusion about a start date, Mills arrived in Lewistown on December 16, 2011. While showing Mills around the property, Cozzens showed him an office she described as "off limits" to him which would serve as her room when she periodically returned to Lewistown over the winter. The office contained personal property belonging to Cozzens as well as various items owned by her boyfriend, Deb Greenough. On December 18, 2011, Cozzens left for Wyoming.
¶ 5 Over the following weeks and months, Mills and Cozzens exchanged emails and text messages almost daily. The messages were friendly and, at times, flirtatious. Mills provided few details regarding his work on the property and did not advise Cozzens of any problem. In turn, Cozzens did not make any specific inquiry, make any extraordinary request, or give Mills any additional direction.
¶ 6 However, in February 2012, Mills requested that Cozzens ***126 reimburse him for $1,387.50 in out-of-pocket expenses incurred for cat supplies, goat feed, and hay delivery. Though upset because she had not contemplated that Mills would incur out-of-pocket expenses for such items, Cozzens had her mother compensate Mills for those expenses but directed him to thereafter advise her in advance of any contemplated out-of-pocket expenses. Cozzens and Mills exchanged a number of terse emails over the following week which culminated in Cozzens apologizing to Mills. Cozzens reminded Mills that, though she liked him and felt that they could be friends, theirs was a "business relationship first and foremost" and that they would need to reevaluate if Mills felt that their arrangement was inequitable. Mills acknowledged that he understood.
¶ 7 On March 4, 2012, Cozzens returned to Lewistown to check on her animals and property. Mills became upset when she told him that she would only be staying for 1-2 days. He asserted that he had made his intentions about her clear and wanted to know why she was ignoring him. Cozzens later testified that she felt that she needed to terminate her dealings with Mills after he became argumentative when she told him that she loved her boyfriend. When Cozzens prepared to leave the following morning, Mills gave her a belated Valentine's Day gift in a box containing a bow and a sexually suggestive note. Cozzens testified that she was mortified when she later opened the box because the gift and note were inappropriate and unwarranted. Following a subsequent negative downturn in their communications, Cozzens notified Mills that she was going to move her animals and directed him to vacate her property by May 1, 2012.
¶ 8 On April 21, 2012, Mills sent Cozzens a lengthy email and a 48-page document entitled "Quit Notice," which he also copied to Cozzens's mother, father, and sister. The email accused Cozzens of dehumanizing and disrespecting Mills and claimed that Cozzens owed him $12,353.51 for previously performed labor, out-of-pocket expenses, and relocation costs. The email further informed Cozzens that, "[a]s a result of consultations with both my former wife and a local attorney, I have removed goods from your mother's *838 property as security against your unpaid debt." Inter alia , the attached "Quit Notice" specified Mills's hourly rates for labor and "literary efforts" (i.e. time spent corresponding with Cozzens) and an itemized list of the services and ***127 tasks for which he claimed entitlement to payment.[1] The notice further declared:
Because I am informing you of my actions, and because I have deposited the goods with an attorney to be held for your collection following full payment or auction pursuant to the settling of a Civil Court case, my actions do not constitute theft....
After I have been paid, the return of your held property can be negotiated with my Montana attorney; you will also have to pay her fee, and the cost of the storage unit in which the goods are deposited. If I am not paid, in full, ... by close of business April 20, 2012, my attorney will instruct you formally as to the more time-consuming and costly process you will be deemed to have insisted upon.
The email and attached notice did not identify, or provide contact information for Mills's purported Montana attorney. Upon receipt of the email, Cozzens contacted the Fergus County Sheriff's Office and reported the matter to Deputy Randy Poser. Deputy Poser subsequently called Mills and left a voice message request for a return call. Mills did not return the call.
¶ 9 Upon her return to Lewistown, Cozzens documented in excess of $28,000 worth of property missing from her home following Mills's departure.[2] Upon additional investigation, law enforcement obtained a warrant for Mills's arrest on suspicion of theft. Officers were unable to arrest Mills until they found him in Musselshell County on July 3, 2011. During a post-arrest interview, Mills admitted to taking property from Cozzens's home but claimed that he took the property and placed it in a storage unit "through the auspice" of an unidentified Montana lawyer. Upon further investigation, including a report from a Roundup woman who had hired Mills to perform work and later discovered property in her rented storage unit that did not belong to her, investigating officers obtained and executed search warrants on Mills's motorhome and the Roundup storage unit where they found most of the property reported missing from Cozzens's home. A number of items ***128 of missing property, including Cozzens's photo albums and yearbooks, were not recovered.
¶ 10 Prior to trial on charges of felony and misdemeanor theft regarding the separate property of Cozzens and Greenough, Mills moved for dismissal on the asserted ground that the State could not prove that he acted with the purpose to deprive the owners of the property within the meaning of § 45-6-301(1)(a), MCA, because, as alleged by the State, he seized and held the property only for the purpose of securing a claimed contract debt. The District Court denied the motion on the ground that the question of whether Mills acted with the requisite mental state for the charged offenses was a question of fact for jury determination. The matter proceeded to trial and the jury found Mills guilty of both counts of theft as charged.
¶ 11 After the verdicts, Mills again moved for dismissal, or judgment as a matter of law, on the asserted ground that the undisputed evidence that he took the property under a claim of civil right, even if mistaken, precluded proof that he acted with the requisite purpose to deprive the owners of the property. Again finding the matter within the province of the jury, the District Court denied the motion and ultimately sentenced Mills on the felony to a five-year term of commitment to the Montana Department of Corrections, all time suspended, with a concurrent thirty-day jail commitment on the misdemeanor, with credit for time served. Mills timely appealed.
*839 STANDARD OF REVIEW
¶ 12 The denial of a motion to dismiss is a question of law reviewed de novo for correctness. State v. Burns , 2011 MT 167, ¶ 17, 361 Mont. 191, 256 P.3d 944. District courts have broad discretion in instructing the jury on applicable law. State v. Shively , 2009 MT 252, ¶ 9, 351 Mont. 513, 216 P.3d 732. We review jury instructions for an abuse of discretion based on whether, as a whole, the instructions fully and fairly instruct the jury on applicable law. State v. Dunfee , 2005 MT 147, ¶ 20, 327 Mont. 335, 114 P.3d 217. We also review evidentiary rulings, including rulings on the admissibility of expert testimony, for an abuse of discretion. Whitefish Credit Union v. Prindiville , 2015 MT 328, ¶ 10, 381 Mont. 443, 362 P.3d 53. An abuse of discretion occurs if a court exercises its discretion based on a mistake of law, erroneous finding of fact, or otherwise arbitrary reasoning resulting in substantial injustice. See State v. Hicks , 2013 MT 50, ¶ 14, 369 Mont. 165, 296 P.3d 1149. A court's reasoning is arbitrary if it lacks conscientious judgment or is beyond the bounds of reason. Hicks , ¶ 14.
***129 DISCUSSION
¶ 13 1. Whether the District Court erroneously denied Mills's pretrial and post-verdict motions to dismiss based on the unqualified principle that a claim of right precludes a purposeful deprivation of property under § 45-6-301(1), MCA ?
¶ 14 Pursuant to State v. Ferrel , 208 Mont. 456, 463-66, 679 P.2d 224, 228-29 (1984), Mills asserts that, as a matter of law, the conditional taking or withholding of property of another under a claim of right, even if mistaken about the right, precludes a jury determination that a defendant acted with "the purpose of depriving the owner of the property" as referenced in § 45-6-301(1)(a), MCA. The State asserts that Mills's reading of Ferrel is overbroad and that Mills's asserted claim-of-right defense is not cognizable under Montana law.
¶ 15 In pertinent part, a person commits the offense of theft "when the person purposely or knowingly obtains or exerts unauthorized control over property of the owner and ... has the purpose of depriving the owner of the property." Section 45-6-301(1)(a), MCA. As pertinent here, "a person acts purposely with respect to a result ... if it is the person's conscious object to ... cause that result." Section 45-2-101(65), MCA. "Deprive" means "to withhold property of another ... with the purpose to restore it only upon payment of ... compensation." Section 45-2-101(20)(a)(iii), MCA. "When a particular purpose is an element of an offense, the element is established [even though] the purpose is conditional, unless the condition negat[e]s the harm or evil sought to be prevented by the law defining the offense." Section 45-2-101(65), MCA.
¶ 16 In Ferrel , after lawfully picking up a check issued by a third party for delivery to her employer, the defendant ranch employee, upon learning of her employer's intent to terminate her employment, withheld the check from the employer on the condition that the employer pay her on an unrelated debt (the value of a garden) that she claimed the employer owed as a result of the termination of her employment. Ferrel , 208 Mont. at 457-60, 679 P.2d at 225-26. On appeal of the defendant's ensuing theft conviction, we reversed and remanded for a new trial because, as a result of the district court instructing the jury on four distinct definitions of "deprive" as referenced in § 45-6-301(1)(a), MCA, it was not possible to determine on which theory the jury found the defendant guilty of theft. Ferrel , 208 Mont. at 464-65, 679 P.2d at 228-29 (noting that the evidence did not support all definitions of theft instructed).
¶ 17 We then took further occasion to construe § 45-2-101(65), MCA (conditional nature of a defendant's purpose does not preclude proof of ***130 proscribed conduct "unless the condition negat[e]s the harm or evil sought to be prevented by the [statute] defining the offense"), with §§ 45-6-301(1)(a) and 45-2-101(20)(a)(iii), MCA. Ferrel , 208 Mont. at 465-66, 679 P.2d at 229. We first noted that "literal application" of § 45-2-101(20)(a)(iii), MCA (defining "deprive" as "withhold[ing] property of another with the purpose" of "restor[ing] it only upon [the other's] payment *840 of reward or other compensation"), would potentially subject a person to criminal liability who seized or withheld property of another as payment or security on a debt under a lawful claim of civil right. Ferrel , 208 Mont. at 465-66, 679 P.2d at 229 (referencing various hypothetical claim of right scenarios). Without distinguishing the broader language of § 45-2-101(20)(a)(iii), MCA, from that of § 45-2-101(20)(a)(i), MCA, we summarily concluded that, for purposes of § 45-2-101(65), MCA (defendant's conditional purpose precludes proof of a proscribed purpose if the "condition negat[e]s the harm or evil sought to be prevented by the [statute] defining the offense"), the evil or harm § 45-6-301(1)(a), MCA, "seeks to prevent is [limited to] the permanent deprivation" of all or part of the property of another. Ferrel , 208 Mont. at 466, 679 P.2d at 229 (emphasis added). Then, noting that the defendant's only purpose was to conditionally take and withhold the property to leverage payment from the owner under an asserted claim of right, we dismissed the theft charge, holding that, while Ferrel "may have committed a civil trespass," she "did not commit a crime as defined" by §§ 45-6-301(1)(a) and 45-2-101(20)(a)(iii), (65), MCA. Ferrel , 208 Mont. at 466, 679 P.2d at 229. However, a brief review of the development of Montana's modern offense of theft, and the extent and manner in which it is broader than the predecessor offense of larceny, manifests the erroneous incongruity of our analysis in Ferrel .
¶ 18 At common law, and in derived statutory formulations, the essence of larceny was a conscious unauthorized taking, withholding, or use of the property of another with felonious intent . See , e.g. , § 94-2701, RCM (1947); State v. Smith , 135 Mont. 18, 24-25, 334 P.2d 1099, 1102 (1959) ; State v. Wallin , 60 Mont. 332, 340-41, 199 P. 285, 288 (1921) ; State v. Rechnitz , 20 Mont. 488, 490-93, 52 P. 264, 265-66 (1898). Accord State v. Smith , 148 Conn.App. 684, 86 A.3d 498, 508 (2014). Felonious intent, or animus furandi , required proof of a specific intent to permanently deprive another of the use or possession of all or a portion of his or her property. See , e.g. , § 94-2701, RCM (1947); Smith , 135 Mont. at 24-25, 334 P.2d at 1102 ; Wallin , 60 Mont. at 340-41, 199 P. at 288 ; Rechnitz , 20 Mont. at 490-93, 52 P. at 265-66 ; Smith , 86 A.3d at 510-12. Thus, as generally alluded to without attribution in Ferrel , 208 Mont. at 466, 679 P.2d at 229, felonious intent was the essential ***131 distinguishing factor between a crime and a mere civil trespass regarding another's property. Smith , 135 Mont. at 24, 334 P.2d at 1102 (quoting State v. Labbitt , 117 Mont. 26, 32, 156 P.2d 163, 165 (1945) ); State v. Peterson , 36 Mont. 109, 110-12, 92 P. 302, 303 (1907) ; Rechnitz , 20 Mont. at 490-93, 52 P. at 265-66.
¶ 19 In 1973, following the lead of Illinois and other states, Montana replaced its former common-law based criminal code with a modified version of the Model Penal Code (Am. Law Inst. 1962) (hereinafter MPC). See § 45-1-101, MCA ; State v. Watson , 211 Mont. 401, 408, 686 P.2d 879, 883 (1984) ; Jeff Essman, A Primer on the Element of Mental State in the Montana Criminal Code of 1973 , 37 Mont. L. Rev. 401-402 (1976).[3] Under the 1973 Code, the modern offense of theft, as defined by § 45-6-301(1)(a), MCA, comprehensively included "the broad range of offenses against property" formerly encompassed within the common law and derived statutory formulations of larceny and embezzlement. See People v. Harden , 42 Ill.2d 301, 247 N.E.2d 404, 406 (1969) (construing Illinois MPC formulation of theft); MPC Official Draft and Explanatory Notes, § 223.1-223.9 ("most important innovation reflected in [MPC] Article 223 is the consolidation of traditional acquisitive offenses into [a] single offense called 'theft' "). In addition to revising the elemental formulation of specific crimes, the 1973 Code replaced the common-law concepts of specific and general intent with various described criminal mental states (purposely, knowingly, negligently) as separately defined by § 45-2-101(35), (43), and (65), MCA, and referenced in statutes defining *841 particular offenses. Section 45-2-103(1), MCA ; State v. Starr , 204 Mont. 210, 218-19, 664 P.2d 893, 897-98 (1983) (referencing dual intent/purpose offenses of aggravated kidnapping, burglary, and theft); State v. Howard , 195 Mont. 400, 407, 637 P.2d 15, 19 (1981). In replacing the "dual intent" offense of larceny with the modern offense of theft, the 1973 Code preserved the concept of specific intent but the revised form of the element of theft required proof of the specific purpose of "depriving the owner of the property." See § 45-6-301(1), MCA ; Starr , 204 Mont. at 218-19, 664 P.2d at 897-98 (occasional references in post-1973 precedent to "specific intent" refer to the specific purposes defined and described in 1973 Code); ***132 State v. Klein , 169 Mont. 350, 356-57, 547 P.2d 75, 78 (1976) (mental states "purposely" and "knowingly" replaced former requirement for proof of "felonious" intent).
¶ 20 Like larceny before it and as recognized in Ferrel , the modern offense of theft proscribes the permanent deprivation of property of another. See §§ 45-6-301(1) and 45-2-101(20)(a)(i), (b), MCA. However, in contrast to larceny's limited focus on specific intent to permanently deprive another of property, our modern theft statute further proscribes and seeks to prevent the conditional withholding of property of another for the purpose of compelling the other to pay a "reward or other compensation" without lawful authority . See §§ 45-6-301(1)(a) and 45-2-101(20)(a)(iii), MCA (referencing "unauthorized control," "purpose to deprive," and withholding property "with the purpose to restore it only upon payment of reward or other compensation"); State v. Doyle , 1999 MT 318, ¶ 9, 297 Mont. 270, 993 P.2d 9 ("deprive" as referenced in § 45-6-301(1), MCA, and defined by § 45-2-101(20)(a), MCA, not limited to permanent deprivations of property). Accord Ferrel , 208 Mont. at 468, 679 P.2d at 230-31 (Gulbrandson, J., dissenting).[4] Unfortunately, as subsequently recognized and effectively overruled in Doyle , our limited analysis in Ferrel failed to recognize the plain meaning and broader purpose of § 45-2-101(20)(a)(iii), MCA, in the context of §§ 45-6-301(1)(a) and 45-2-101(20)(a)(i), (45) - (46), (53), (62), (65), MCA. Contrary to Ferrel , the evil or harm § 45-6-301(1), MCA, seeks to negate is not narrowly limited to taking or withholding ***133 property of another only for the purpose of permanently depriving the owner thereof. Ferrel thus further failed to recognize that, for purposes of § 45-2-101(65), MCA, not every conditional taking or withholding of another's property under an asserted claim of right necessarily negates the proscription of §§ 45-6-301(1)(a) and 45-2-101(20)(a)(iii), MCA. An asserted claim of right negates the proscription of §§ 45-6-301(1)(a) and 45-2-101(20)(a)(iii), MCA, only if the defendant acted with the purpose to conditionally take or withhold the property without knowledge that the defendant had no lawful authority to do so. See §§ 45-6-301(1)(a) and 45-2-101(20)(a)(iii), (62), (65), MCA ; Holloway v. United States , 526 U.S. 1, 10-11, 119 S.Ct. 966, 971-72, 143 L.Ed.2d 1 (1999) ("defendant may not negate a proscribed intent by requiring the victim to comply with a condition the defendant has no right to impose" (citing MPC § 2.02(6) (1985) ) ). Thus, contrary to Ferrel , the 1973 Criminal Code expressly recognizes that a *842 person who exerts unauthorized control over property of another may commit the offense of theft even if the person's purpose in taking or withholding the property is merely to temporarily withhold it on the condition that the owner pay a "reward or other compensation" for return of the property. Sections 45-1-201(20)(a)(iii) and 45-6-301(1), MCA.
¶ 21 However, at common law and under our derived pre-1973 criminal code, an honest, good-faith belief that a defendant had a legal right to take or withhold property from another, even if mistaken, was a complete defense to larceny because, as a matter of fact, that belief necessarily negated proof of the specific intent required for a crime. See § 94-2717, RCM (1947) (proof that "property ... appropriated openly and avowedly under a claim of title preferred in good faith," even though "untenable," constituted a "sufficient defense" to larceny); originally enacted Penal Code § 896 (1895);[5] State v. McCracken , 93 Mont. 269, 275-76, 18 P.2d 302, 304 (1933) ; People v. Tufunga , 21 Cal.4th 935, 90 Cal.Rptr.2d 143, 987 P.2d 168, 169, 172-74 (1999) (citing Cal. Penal Code § 511 (1872) and 4 William Blackstone Commentaries *230); People v. Eastman , 77 Cal. 171, 19 P. 266, 267 (1888) ; People v. Williams , 176 Cal.App.4th 1521, 98 Cal.Rptr.3d 770, 774-75 (2009) ; People v. Russell , 144 Cal.App.4th 1415, 51 Cal.Rptr.3d 263, 272 (2006) ; People v. Romo , 220 Cal.App.3d 514, 269 Cal.Rptr. 440, 441-42 (1990) ; Linde v. State , 61 Okla.Crim. 136, 66 P.2d 527, 528-29 (1937) ;
***134 50 Am. Jur. 2d Larceny § 35.[6] If supported by the evidentiary record, a defendant was entitled to a jury instruction that a good-faith belief in a legal right to take or withhold the property of another precluded proof of felonious intent. See , e.g. , McCracken , 93 Mont. at 275-76, 18 P.2d at 304. However, the instruction required evidence sufficient to give rise to a reasonable doubt as to whether the defendant had a good-faith belief in a claim of right based on something more than a claim of right to a self-help offset on non-specific property owned by the debtor on an unliquidated debt. State v. Chase , 134 Wash.App. 792, 142 P.3d 630, 637 (2006) (claim-of-right instruction requires evidence of some specific factual or legal basis for good-faith claim of right beyond mere subjective belief-mere reliance on uncorroborated advice of unidentified third-party insufficient alone); People v. Holmes , 5 Cal.App.3d 21, 84 Cal.Rptr. 889, 890 (1970) (construing Cal. Penal Code § 511 and common law); People v.Teplitz , 27 A.D.2d 891, 277 N.Y.S.2d 843, 844 (1967) ;[7] People v. Proctor , 169 Cal.App.2d 269, 337 P.2d 93, 99 (1959) ; J.W. Matthews & Co. v. Emp'rs' Liab. Assur. Corp. , 195 N.Y. 593, 89 N.E. 1102 (1909) (discussing N.Y. Penal Code § 528 (1881) ); Romo , 269 Cal.Rptr. at 442-43 (construing Cal. Penal Code § 511 (1872) );[8] Cluff v. Mut. Ben. Life Ins. Co. , 99 Mass. 317, 327 (Mass. 1868). See also People v. Selivanov , 5 Cal.App.5th 726, 210 Cal.Rptr.3d 117, 154-55 (2016) (evidence of bad-faith belief in asserted claim of right includes awareness of contrary facts, concealed taking, claim based on "notoriously illegal activity," or claim based merely on unilateral determination of a right to offset an unsecured or unliquidated debt). Whether a defendant had a good-faith belief of legal right to take or withhold the property of another was a question of fact for jury determination under *843 the totality ***135 of the circumstances. State v. Letterman , 88 Mont. 244, 247, 292 P. 717, 721 (1930) ; Rechnitz , 20 Mont. at 489, 52 P. at 265 ; People v. Knott , 15 Cal.2d 628, 104 P.2d 33, 36 (1940).
¶ 22 Both the MPC and Montana's derived 1973 Criminal Code carried forward the availability of a claim-of-right defense to the modern offense of theft. In regard to the new mental state "purposely," the MPC provided that a defendant's "[i]gnorance or mistake as to a matter of fact or law is a defense if ... the ignorance or mistake negat[e]s the purpose ... required to establish a material element of the offense." MPC § 2.04(1)(a). The MPC explained that § 2.04(1) :
states the general principle governing whether and when ignorance or mistake of fact or law will afford a defense to a criminal charge. The matter is conceived as a function of the [requisite mental state] otherwise required for [an] offense. Such ignorance or mistake is a defense to the extent that it negat[e]s [the requisite mental state ].... The effect of this section therefore turns upon the [requisite mental state] for each element of the offense.
MPC § 2.04(1), Explanatory Note (emphasis added). As to offenses that require proof of specific purposes (e.g., theft, et al.), the MPC provided that, "[w]hen a particular purpose is an element of an offense, the element is established although such purpose is conditional, unless the condition negat[e]s the harm or evil sought to be prevented by the law defining the offense ." MPC § 2.02(6) (emphasis added). The MPC explained that § 2.02(6)"is in accord with present law in that it declines to give defensive import to the fact that the actor's purpose was conditional unless the condition negat[e]s the harm or evil sought to be prevented by the ... offense." MPC § 2.02(6), Explanatory Note (emphasis added). Read in conjunction with MPC § 2.02(6), the claim-of-right defense encompassed within MPC § 223.1(3)(b) is factually subsumed in the broader ignorance or mistake-of-law defense contemplated by MPC § 2.02(6). Thus, except as to the substitution of a requirement for proof of a specific proscribed purpose for proof of specific intent, the MPC clearly carried forward with the modern offense of theft the essence of the good-faith claim-of-right defense previously available as a defense to the common-law and derived statutory formulations of larceny.
¶ 23 Though our 1973 Criminal Code does not expressly recognize "ignorance or mistake" of law or "claim of right" as defenses to theft, express recognition of a claim-of-right defense was unnecessary due to the inclusion of the essence of MPC §§ 2.04(1)(a) and 223.1(3)(b) and related provisions. Theft, as defined by §§ 45-6-301(1) and 45-2-101(20)(a)(iii), (65), MCA, largely derives without significant ***136 substantive change from MPC §§ 2.02(2)(a), 2.04(1)(a), 223.0(1), 223.2, and 2.04(1)(a). "Purposely," as defined by § 45-2-101(65), MCA includes the essence of MPC §§ 2.02(6) and 2.04(1)(a) providing that a conditional purpose does not preclude proof of a proscribed purpose unless the condition negates the evil or harm proscribed by the statute defining the offense.
¶ 24 The Fourteenth Amendment to the United States Constitution, Montana Constitution Article II, Section 17, and § 26 -1-403(2), MCA, independently require the state to prove every factual element of a charged offense beyond a reasonable doubt. In re Winship , 397 U.S. 358, 361-64, 90 S.Ct. 1068, 1071-73, 25 L.Ed.2d 368 (1970) ; State v. Clark , 1998 MT 221, ¶ 29, 290 Mont. 479, 964 P.2d 766. Accordingly, like MPC § 2.02(1), § 45-2-103(1), MCA, generally requires the state to prove that the defendant acted with the requisite criminal mental state for each element of a charged offense. The fundamental right to require the government to prove all elements of an offense beyond a reasonable doubt necessarily includes the right to have the jury consider any admissible evidence that, if true, would factually negate the requisite mental state for an offense. Cheek v. United States , 498 U.S. 192, 203-204, 111 S.Ct. 604, 611-12, 112 L.Ed.2d 617 (1991) (reversing federal tax evasion conviction for failure to instruct jury that offense required proof of intentional or knowing disregard of independent duty to pay taxes and file tax returns). Accord State v. Averyt , 179 Ariz. 123, 876 P.2d 1158, 1165 (App. 1994) (citing Cheek ). As a matter of fact, evidence of a *844 good-faith belief that a defendant had a legal right to take or withhold property of another to satisfy or secure a claimed debt, even if mistaken, necessarily precludes the state's contrary assertion that the defendant acted with the specific purpose to conditionally take or withhold the property of another without lawful authority . See §§ 45-6-301(1)(a) and 45-2-101(20)(a)(iii), (65), MCA. Thus, arising from construction of §§ 45-2-103(1), 45-6-301(1), and 45-2-101(20)(a)(iii), (53), (62), (65), MCA, evidence of an honest good-faith belief, even if mistaken, that a defendant had a legal right to take or withhold the property of another to satisfy or secure a claimed debt remains a cognizable fact defense to theft, as defined by §§ 45-6-301(1)(a) and 45-2-101(20)(a)(iii), (65), MCA, because it precludes the state's contrary assertion that the defendant acted with knowledge that he or she had no lawful authority to conditionally withhold the property for payment or as security on ***137 the debt.[9]
¶ 25 In contrast, mere ignorance or misunderstanding of the law is not a defense to proscribed criminal conduct. State v. Payne , 2011 MT 35, ¶ 22, 359 Mont. 270, 248 P.3d 842 ; State v. Trujillo , 2008 MT 101, ¶¶ 14-15, 342 Mont. 319, 180 P.3d 1153.[10] The critical distinction between this ancient principle and the narrow good-faith claim-of-right defense is that theft, as defined by §§ 45-6-301(1)(a) and 45-2-101(20)(a), (65), MCA, requires proof of a specific purpose to deprive another of property, whether permanently or conditionally, without lawful authority and the resulting fact defense to the requisite mental state applies to a point of civil law separate and apart from mere ignorance of the elements of the criminal offense. See People v. Sevilla , 132 Ill.2d 113, 138 Ill.Dec. 148, 547 N.E.2d 117, 123 (1989) ; Lewis v. People , 99 Colo. 102, 60 P.2d 1089, 1096-97 (1936) ; People v. Goodin , 136 Cal. 455, 69 P. 85, 86 (1902) ; People v. Eastman , 77 Cal. 171, 19 P. 266, 267 (1888) ; People v. Vineberg , 125 Cal.App.3d 127, 177 Cal.Rptr. 819, 824 (1981) ; Joshua Dressler, Understanding Criminal Law 178 (5th ed. 2009) (mistake about a separate law implicated on the facts by requisite mental state for the offense exculpates if negates specific intent, but does not exculpate with respect to a general intent ***138 offense or element even if mistake is reasonable). See also Ratzlaf v. United States , 510 U.S. 135, 149, 114 S.Ct. 655, 663, 126 L.Ed.2d 615 (1994) (reversing conviction due to failure to instruct that offense required proof of actual awareness of violation of separate legal duty); Cheek , 498 U.S. at 201, 111 S.Ct. at 610 (recognizing good-faith ignorance of duty to pay taxes and file returns as fact defense to tax evasion because offense requires proof of specific intent or knowledge in re disregard of separate legal duty); United States v. Hancock , 231 F.3d 557, 563 (9th Cir. 2000) (distinguishing crimes that merely require proof of purpose or knowledge to engage in proscribed conduct from offenses that require *845 proof of specific intent, purpose, or knowledge of unlawful conduct based on breach of separate legal duty).
¶ 26 As a simple fact defense contesting the state's proof on the requisite mental state for theft specified by § 45-6-301(1)(a), MCA, the claim-of-right defense imposes no affirmative burden of proof on the defendant. See Winship , 397 U.S. at 361-64, 90 S.Ct. at 1071-73 ; Clark , ¶ 29. However, in contrast to mere belief in a general self-help right to satisfy or secure a claimed debt from non-specific property owned by the debtor, the defense arises as a matter of fact upon evidence sufficient to raise a reasonable doubt as to whether the defendant took or withheld the property of another under a good-faith belief in a civil-law right to take or withhold specific, identifiable property to satisfy or secure a claimed debt. See §§ 45-6-301(1)(a), and 45-2-101(20)(a), (65), MCA. See also State v. Stenger , 226 P.3d 441, 455 (Haw. 2010) (construing Hawaii MPC variant); Selivanov , 210 Cal.Rptr.3d at 154-55 ; Chase , 142 P.3d at 637 ; Romo , 269 Cal.Rptr. at 443 ; Holmes , 84 Cal.Rptr. at 890-91 ; Proctor , 337 P.2d at 99 ; People v. Photo , 45 Cal.App.2d 345, 114 P.2d 71, 74-75 (1941) ; J.W. Matthews , 89 N.E. at 1102 ; Cluff , 99 Mass. at 327. Such evidence then supports argument that the defendant did not have the mental state required by §§ 45-6-301(1)(a) and 45-2-101(20)(a), (65), MCA, with the issue remaining as a question of fact for jury determination under the totality of the circumstances. See Letterman , 88 Mont. at 255, 292 P. at 721 ; Knott , 104 P.2d at 36.
¶ 27 Here, in his pretrial motion to dismiss, Mills asserted that the State's charging affidavit assertion, that he removed property from Cozzens's home "as security against payment of debts," alone precluded probable cause for theft as charged because, pursuant to Ferrel , § 45-6-301(1), MCA, proscribes only the purpose to permanently deprive the owner of the property regardless of the contrary language of § 45-2-101(20)(a)(iii), MCA. As in Ferrel , Mills thus asserted that his conduct at most constituted a civil trespass rather than a crime. However, as ***139 previously shown, Ferrel erroneously concluded that § 45-6-301(1), MCA proscribes only the purpose to permanently deprive an owner of property, thereby precluding jury consideration of whether he truly held such a belief in good faith. To that extent, and in accordance with our similar holding in Doyle , Ferrel is hereby overruled.
¶ 28 The State's charging affidavit asserted that Mills had no legal authority to remove the subject property from Cozzens's home under the circumstances. The affidavit stated facts, that if proven, were sufficient to constitute theft, as defined by §§ 45-6-301(1)(a) and 45-2-101(20)(a)(iii), MCA. The issue as to whether Mills acted under a good-faith claim of right that, if true, would negate proof of the requisite mental state for the theft was a question of fact for jury determination at trial. We hold that the District Court correctly denied Mills's pretrial motion to dismiss.
¶ 29 As to Mills's post-trial motion, it is beyond genuine material dispute on the trial record that he conditionally took property valued in excess of $28,000 from Cozzens's home to secure an unliquidated debt under an unspecified claim of right. It is similarly beyond genuine material dispute that Mills had no ownership interest in the property, that the parties had no agreement granting Mills a security interest in any property, and that neither their actual agreement nor Cozzens otherwise authorized or contemplated such action. Nor was there any evidence to support a cognizable possessory lien claim. Thus, sufficient evidence existed upon which the jury could have reasonably concluded beyond a reasonable doubt that Mills purposely took or withheld the property to leverage a payment on a disputed contract debt with knowledge that he had no lawful authority to do so.
¶ 30 As to his asserted contrary good-faith belief, there is no evidence that, even if mistaken, Mills actually believed that he had any legal basis to remove property from Cozzens's home other than belief in a general, self-help right to take non-specific property owned by Cozzens as collateral on the unliquidated claim. Indeed, on appeal, Mills asserts that after researching the law he engaged in "self-help" and held several of Cozzens's personal items as collateral until she paid him for his work and out-of-pocket expenses.
*846 Regardless of Mills's claimed general self-help right, sufficient evidence existed upon which the jury could have concluded beyond a reasonable doubt that he purposely took property from Cozzens's home to leverage payment on an unliquidated debt with knowledge that he had no lawful authority to do so. We hold that the District Court correctly denied Mills's post-trial motion to dismiss or for judgment notwithstanding verdict.
¶ 31 2. Whether the District Court erroneously failed to instruct the jury ***140 on the claim-of-right defense?
¶ 32 Mills asserts that the District Court erroneously rejected his proffered jury instructions supporting his claim-of-right defense. The State asserts that the court did not err because the asserted claim-of-right defense is not cognizable under Montana law. Having determined that a good-faith claim of right is a cognizable fact defense that negates proof of an essential element of theft, we consider whether the jury instructions given by the court nonetheless fully and fairly instructed the jury on the applicable law as a whole.
¶ 33 If supported by the evidence, and upon request, a defendant is entitled to jury instruction on §§ 45-6-301(1)(a) and 45-2-101(20)(a), (65), MCA, sufficient to support a jury argument that the defendant did not have the requisite mental state for theft specified by § 45-6-301(1)(a), MCA, due to a good-faith claim of right. See State v. Goulet , 283 Mont. 38, 41, 938 P.2d 1330, 1332 (1997) (defendant entitled to jury instructions "on any theory ... supported by the record"); State v. Hagen , 273 Mont. 432, 442, 903 P.2d 1381, 1387 (1995) (jury instructions are generally matters of trial strategy). However, a defendant is not entitled to any particular instruction. District courts have broad discretion to formulate jury instructions as long as the instructions, viewed as a whole, fully and fairly instruct the jury on the applicable law. Goulet , 283 Mont. at 41, 938 P.2d at 1332 ; State v. Brandon , 264 Mont. 231, 237, 870 P.2d 734, 737 (1994). Taken as a whole, the instructions need only be sufficient to allow a defendant to fairly present asserted defense theories supported by applicable law and the evidence-courts are not required to "give repetitious instructions nor instruct on every nuance" of a defense. Hagen , 273 Mont. at 442, 903 P.2d at 1387.
¶ 34 Here, Mills asserts that the District Court erroneously rejected his proposed Instruction No. 1 ("[a] person does not commit the crime of theft if the person has a recognized statutory or common law lien on the property"), Instruction No. 2 ("[a] person who has a reasonable claim of right to property, even if the person's claim of right is mistaken, does not commit the crime of theft"), Instruction No. 4 (referencing various examples of valid and invalid claims of right as referenced in Ferrel , 208 Mont. at 465-66, 679 P.2d at 229 ); and Instruction No. 17 (regarding the "reasonable belief" exceptions specified in § 45-2-103(6), MCA ). While Mills's proposed Instruction No. 1 was a correct statement of the law, it was encompassed within the District Court's instruction that the State must prove that he "purposely or knowingly obtained or exerted unauthorized control over the [subject] property." Mills's proposed Instruction No. 17 was not ***141 supported by the evidence.
¶ 35 Mills's proposed Instruction Nos. 2 and 4 were not correct statements of the law. As previously shown, a correct statement of the law is that a person does not act with the purpose to deprive another of property if the person had a good-faith claim of a civil-law right to take or withhold specific identifiable property to satisfy or secure a claimed debt. A defendant is entitled to such instruction only if supported by evidence sufficient to raise a reasonable doubt as to whether the defendant acted under such reasonable good-faith belief in contrast to a mere belief in a general self-help right to take or withhold non-specific property of the debtor to satisfy or secure the claimed debt. Thus, the District Court did not err in refusing Mills's proposed instructions.
¶ 36 Inter alia , the District Court instructed the jury on: (1) the elements of theft as defined by § 45-6-301(1)(a)-(b), MCA ; (2) that "the State is not obligated to prove that Mr. Mills knew his conduct was prohibited by the theft statute" ( § 45-2-103(5), MCA ); (3)
*847 on the definition of "purposely" as defined by § 45-2-101(65), MCA ; (4) on the definition of "deprive" as defined by § 45-2-101(20)(a)(i) and (iii), MCA ; and (5) on the provision of § 45-2-101(65), MCA stating that "[w]hen a particular purpose is an element of an offense, the element is established although such purpose is conditional, unless the condition negat[e]s the harm or evil sought to be prevented by the law defining the offense." Without express reference to a claim of right, the court's instructions constituted a minimally sufficient statement of applicable law, particularly given that even a correct claim-of-right instruction was not supported by the evidence. Thus, the instructions given by the court, as at issue here, were minimally sufficient to fully and fairly instruct the jury on the applicable law and to allow Mills to argue any theory of defense supported by the evidence. On the evidentiary record in this case, we hold that the District Court did not erroneously fail to instruct the jury on the claim-of-right defense to theft.
¶ 37 3. Whether the District Court erroneously allowed the State to present expert testimony on matters of law?
¶ 38 Over Mills's objection, the District Court allowed the State to present expert testimony from Billings attorney Brian Marty regarding various civil law matters bearing on whether Mills had a valid claim of right to remove property from Cozzens's home as collateral on the claimed debt. Mills asserts that the court erroneously overruled his objection resulting in substantial prejudice. In response, the State acknowledges that though "some of Marty's testimony could be considered an opinion applying the law to the facts, none of his legal ***142 conclusions had any bearing on" whether the State satisfied its burden of proving the essential elements of the charged offenses beyond a reasonable doubt. The State further asserts that "Mills opened the door" to Marty's testimony "by claiming that he acted in reliance on his reasonable belief to a claim of right to Cozzens's property."
¶ 39 Where necessary to assist the jury in understanding specialized matters beyond the realm of common experience and knowledge, a qualified expert may present opinion testimony regarding matters of fact including matters "that embrace the ultimate [factual] issues to be decided by the jury." Perdue v. Gagnon Farms, Inc. , 2003 MT 47, ¶ 28, 314 Mont. 303, 65 P.3d 570. In contrast, an expert may not testify as to legal conclusions or give testimony applying the law to facts because such testimony invades the separate provinces of the court and jury to respectively determine matters of law and fact. See §§ 26-1-201 and -202, MCA ; Perdue , ¶ 28.
¶ 40 Here, the State elicited testimony from Marty that the dispute at issue was a criminal matter rather than a civil matter. The State further elicited Marty's "legal opinion" as to what the terms of the Mills-Cozzens contract were. Marty gave testimony as to whether Mills's asserted claim against Cozzens was a secured or unsecured claim, that prejudgment seizure of debtor assets is not an available legal remedy on an unsecured claim, and that unsecured creditors generally have no prejudgment remedy against debtor assets except under extraordinary situations under circumstances not at issue. Marty ultimately testified that Mills's asserted claim was not legitimate and that there was no valid construction lien, federal migrant worker law, bailment, or other legal right Mills could rely on to remove property from Cozzens's home. Marty's opinion testimony clearly constituted conclusions of law and application of law to facts. We hold that the District Court erroneously allowed the State to present inadmissible legal conclusion testimony regarding the nature and legitimacy of Mills's asserted claim of right.
¶ 41 However, as non-structural trial error, this type of error is reversible error only if prejudicial. State v. Van Kirk , 2001 MT 184, ¶¶ 40-47, 306 Mont. 215, 32 P.3d 735. Due to the nature of expert testimony as authoritative opinion given by a recognized expert in a specialized field of expertise beyond the common knowledge and experience of lay jurors, allowance of improper expert testimony "can be highly prejudicial" depending upon the circumstances. Perdue , ¶ 28. In this circumstance, the dispositive inquiry is whether the tainted *848 evidence was merely cumulative of other evidence and whether "the quality of [the] evidence was such that there was no reasonable ***143 possibility" that it "contributed to the defendant's conviction." Van Kirk , ¶ 44.
¶ 42 Here, independent of Marty's testimony, overwhelming evidence of Mills's guilt supported the jury's verdict. It is beyond genuine material dispute that Mills exerted control over property he did not own to leverage payment of a claimed debt on an unsecured personal services contract. The parties had a simple and limited contractual relationship-Mills would perform listed animal and property caretaking tasks in return for free rent and paid utilities. Nowhere in the multitude of email and text communications between Mills and Cozzens was there any mention or other indication that Mills believed that he had such a right to remove property from Cozzens's home in the event of a future dispute over payment.
¶ 43 However ill-advised, neither party anticipated that Mills would incur out-of-pocket expenses-Mills would perform his assigned tasks using a stock of supplies built up by Cozzens and then obtain other necessary materials and supplies from a third-party vendor on an expense account set up by Cozzens. When Mills surprised Cozzens with a $1,387.50 reimbursement bill for unanticipated costs, Cozzens arranged payment but clearly demanded that Mills keep her apprised of any other unanticipated costs that might arise. Cozzens further reminded Mills about their limited agreement and gave him the opportunity to withdraw or renegotiate. Mills did neither. No mention or notice of any outstanding need or claim by Mills arose until after his angry, hurt, and vengeful reaction to Cozzens personally rebuffing him and giving him notice of termination of their contractual relationship with notice to vacate her property.
¶ 44 Regardless of whether Mills may have had a cognizable or good-faith belief that he was entitled to additional compensation from Cozzens, the record is completely devoid of any evidence or indication that Mills actually believed that he had any cognizable security interest, possessory lien interest, or other legal right to remove specific, identifiable property from Cozzens's home as security for payment on their contract. Mills's belief consisted of nothing more than a patently trumped-up claim to a general self-help right to non-specific property owned by Cozzens. Belying any claim of good faith, the amount and value of the property taken from Cozzens's home had no proportional relationship to the claimed debt. Further belying a good-faith claim, Mills also took various items of property of only "sentimental value" to Cozzens with the admitted hope that she would "spend [her] family's money to see [it] again." Uncharacteristic of a commercial transaction, Mills left no contact information for Cozzens, made no subsequent ***144 attempt to contact her to resolve the matter, and did not return a call from the investigating law enforcement officer who called for an explanation. Even after his arrest, Mills persisted in asserting that he acted under the advice of an unidentified lawyer. However, at trial, Mills finally admitted that he in fact had not consulted with a lawyer.
¶ 45 The jury was thus faced with an underlying debt claim that was dubious at best, Mills's naked assertion of a general self-help right, based on nothing more than unattributed internet "research," and conduct wholly inconsistent with a good-faith belief in a civil legal right. Against that backdrop, Marty's legal opinion testimony focused on a point not seriously disputed by Mills-that he did not actually have a legal right to remove property from Cozzens's home. Rather, his defense was that he believed in good faith that he did, thus negating the State's proof of the requisite mental state for theft. Though having some tangential relevance on whether Mills acted in good faith, (see People v. Watt , 229 Cal.App.4th 1215, 177 Cal.Rptr.3d 871, 874 (2014) (objective reasonableness not necessarily required for good-faith belief in claim of right but "highly unreasonable belief" may support inference of bad faith) ), the fact that he did not actually have a cognizable legal right to remove property from Cozzens's home did not necessarily preclude a mistaken but good-faith belief that he did. See State v. Lundblade , 191 Mont. 526, 531-32, 625 P.2d 545, 548-49 (1981) (jury instruction in re civil law requirements for *849 security interest or lien erroneous in isolation because it would support inference that non-compliance therewith equated with purpose to deprive without lawful authority); Photo , 114 P.2d at 74-76 (good-faith belief in otherwise cognizable possessory lien sufficient even though claim technically invalid due to prior surrender of possession). Thus, Marty's testimony was of only tangential relevance at best.
¶ 46 Though the erroneous admission of only tangentially relevant evidence often supports a finding of prejudice depending on the circumstances, it was inconsequential here given the juxtaposition of overwhelming admissible evidence of guilt and the complete absence of any evidentiary basis which would have supported even a reasonable doubt as to whether Mills acted under a good-faith belief that he had a legal right to remove specific, identifiable property from Cozzens's home to secure the claimed contract debt. Rather than evidence of a cognizable good-faith claim of right, Mills's mere belief in a general self-help right to offset or secure a claimed contract debt with non-specific property of the debtor was no more than a defense based on ignorance of the law. Under these circumstances, there was no reasonable possibility that Marty's testimony materially contributed ***145 to Mills's conviction to any significant extent. The tainted evidence was at most merely cumulative of independently admissible evidence of Mills's guilt on the essential elements of the charged offenses of theft. Under the circumstances of this case, we hold that the admission of Marty's legal opinion testimony was harmless error.
CONCLUSION
¶ 47 We hold that that the District Court correctly denied Mills's pretrial and post-trial motions to dismiss or for judgment as a matter of law. On the evidentiary record in this case, we further hold that the court did not erroneously fail to instruct the jury on the claim-of-right defense to theft. Finally, we hold that the District Court erroneously allowed the State to present inadmissible expert legal opinion testimony but that the error was harmless under the circumstances of this case.
¶ 48 Affirmed.
We concur:
JIM RICE, J.
LAURIE McKINNON, J.
BETH BAKER, J.
INGRID GUSTAFSON, J.

Inter alia , the list referenced sorting Cozzens's CD collection "so that you can actually play what you want to hear when you want to hear it," fixing the base of a paper towel holder, unraveling a "Gordian Knot" of nylon rope on the deck, removing delivery stickers from bathroom mirrors, tidying the great room, and tending the mailbox.

Cozzens listed 29 pieces of art, miscellaneous silverware, a photo printer, photo albums, and yearbooks. Also documented as missing were a rodeo jacket and a pencil sketch belonging to Deb Greenough.

The American Law Institute completed the official draft of the MPC in May of 1962. Model Penal Code, Official Draft and Explanatory Notes, Foreword p. xi (Am. Law Inst. 1984). Between 1962 and 1983, thirty-four states enacted a variant of the MPC, including, inter alia , Illinois (1962) and Montana (1973). Model Penal Code, Official Draft and Explanatory Notes, Foreword p. xi.

See also § 45-2-101(53), MCA (defining "owner" as "person other than the offender who has possession ... or other interest in the property ... and without whose consent the offender has no authority to exert control over ..."); § 45-2-101(62), MCA (defining "property of another" as "property in which a person other than the offender has an interest that the offender has no authority to defeat or impair"); Model Penal Code § 223.0(7) (defining "property of another" as "property in which any person other than [the defendant] has an interest [to] which [the defendant] is not privileged to infringe"); Simon v. State , 349 P.3d 191, 196 (Alaska Ct. App. 2015) (Model Penal Code concept of "unauthorized control" encompasses various forms of common-law larceny and embezzlement); People v. Harper , 205 P.3d 452, 455-56 (Colo. App. 2008) (critical inquiry regarding Model Penal Code concept of "unauthorized control" is whether defendant "exercised dominion over [property] in a manner inconsistent with his authority"); State v. Greene , 5 Kan.App.2d 698, 623 P.2d 933, 938 (1981) ("unauthorized control" can only mean "without lawful authority"); State v. Bourbeau , 250 N.W.2d 259, 264 (N.D. 1977) ("unauthorized control" refers to "any form of control over property which exceeds the permissible range of control attributable to any legal interest [the defendant] may have in the property or to authority given by someone entitled to give it ... [including] where the defendant already has lawful control of the property but where he exceeds his authority in some material way").

See similarly Cal. Penal Code § 511 (1872) ; N.Y. Penal Law § 155.15 (1965) (succeeding N.Y. Penal Law § 1306 (1909) and N.Y. Penal Code § 528 (1881) ).

Based on the strong public policy against forcible self-help, other jurisdictions have limited application of the good-faith claim-of-right defense to robbery in certain situations. Tufunga , 90 Cal.Rptr.2d 143, 987 P.2d at 177-81 ; State v. McMillen , 925 P.2d 1088, 1090-91 (Haw. 1996) ; People v. Pagan , 19 N.Y.3d 91, 945 N.Y.S.2d 606, 968 N.E.2d 960, 963 (2012) ; People v. Reid , 69 N.Y.2d 469, 515 N.Y.S.2d 750, 508 N.E.2d 661, 664 (1987).

See similarly N.Y. Penal Code § 548 (1881) and N.Y. Penal Law § 1306 (1909) which provided that, "[u]pon an indictment for larceny, it is a sufficient defense that the property was appropriated openly and avowedly, under a claim of title preferred in good faith, even though such claim is untenable."

See also Tufunga , 90 Cal.Rptr.2d 143, 987 P.2d at 179 n.4 (Cal. Penal Code § 511 (1872) good-faith claim-of-right defense applicable to all variants of larceny and theft); People v. Myers , 206 Cal. 480, 275 P. 219, 220-21 (1929) (California enactments in re larceny and claim-of-title defense reflect and encompass entirety of common-law formulation of larceny).

See similarly Sibert v. State , 301 Md. 141, 482 A.2d 483, 487 (1984) (citing Model Penal Code § 223.1 and Commentaries) (Maryland MPC variant "nowhere defines the phrase 'claim of right,' " but the defense arises as a matter of fact "when a person asserts a right to the property ... in satisfaction of a claim"); State v. Snowden , 7 Ohio App.3d 358, 455 N.E.2d 1058, 1065 (1982) ("[m]istake of fact is widely recognized as a defense to specific intent crimes" and may negate proof of mental state "purposely" under Ohio MPC variant). In contrast to a simple fact defense that challenges the sufficiency of the State's proof on an essential element of an offense, an affirmative defense is a defense under which the defendant effectively admits the truth of the essential factual elements of the charged offense but asserts that the conduct was nonetheless justified, excused, or mitigated as otherwise provided by law on the pertinent facts. State v. Nicholls , 200 Mont. 144, 150, 649 P.2d 1346, 1350 (1982). In contrast to an affirmative defense, the claim-of-right defense effectively admits only that the defendant exerted control over the property but without the requisite mental state required by § 45-6-301(1)(a), MCA (purpose to deprive owner of the property without lawful authority).

Proof that a person acted purposely or knowingly regarding proscribed criminal conduct does not require proof that the person intended to commit a crime or was aware that particular conduct constituted a crime. Section 45-2-103(5), MCA ; Trujillo , ¶¶ 14-15 ; State v. Blalock , 232 Mont. 223, 225, 756 P.2d 454, 456 (1988). Proof of an offense merely requires proof that a person acted voluntarily, with the requisite criminal mental state, in regard to a proscribed result, conduct, or circumstance. See §§ 45-2-101(35), (43), (65) ; 45-2-103(1), (6); and 45-2-202, MCA ; Klein , 169 Mont. at 356, 547 P.2d at 78 (citing annotator's note to 1973 Criminal Code).